**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 31, 2009

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                               No. 137301

PATRICK LAWRENCE IDZIAK,

    Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

In this case, we consider whether a parolee who is convicted and sentenced to a term of imprisonment for a felony committed while on parole is entitled, under Michigan's jail credit statute, MCL 769.11b, to credit for time served in jail after his arrest on the new offense and before sentencing for that offense. We hold that, under MCL 791.238(2), the parolee resumes serving his earlier sentence on the date he is arrested for the new criminal offense. As long as time remains on the parolee's earlier sentence, he remains incarcerated, regardless of his eligibility for bond or his ability to furnish it. Since the parolee is not being held in jail "because of being denied or unable to furnish bond," the jail credit statute does not apply.

Further, a sentencing court lacks common law discretion to grant credit against a parolee's new minimum sentence in contravention of the statutory scheme. Finally, the denial of credit against a new minimum sentence does not violate the double jeopardy clauses or the equal protection clauses of the United States or Michigan constitutions. US Const, Am V and XIV; Const 1963, art 1, §§ 2 and 15.

## I. FACTS AND PROCEDURAL HISTORY

About 3:00 a.m. on November 23, 2006, while defendant was on parole,[1] he confronted Brenda Young, an employee of the Bow Tie Tavern in Alpine Township, Kent County, as she was closing the bar for the night. She was the only person still present in the bar. Defendant approached Young with a shotgun when she opened the back door to take out the trash. He questioned her about the keys to the jukebox, pool table, cigarette machine, and lottery machine. She told him that she only had the key to the lottery machine. She opened the machine, surrendering the cash inside. Defendant pried open the jukebox with a crowbar and took the cash inside. He then tied up Young and stole her car. She freed herself about 40 minutes later and called the police. An investigation revealed defendant's involvement in the crime, and police arrested him on November 28, 2006.

---

[1] Defendant's lengthy criminal history includes 13 prior felony convictions. He was granted parole on May 10, 2006.

Defendant pleaded guilty to armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b. On March 6, 2007, the court sentenced him to a term of 12 to 50 years' imprisonment for the armed robbery conviction and the mandatory consecutive two-year term for the felony-firearm conviction. The sentencing court did not grant defendant credit against the new sentences for the 98 days he spent in jail between his arrest and sentencing.

Defendant's appellate counsel moved for postjudgment relief, arguing that jail credit was mandatory under MCL 769.11b and, in the alternative, that the court had discretion to award credit. Citing *People v Seiders*, 262 Mich App 702; 686 NW2d 821 (2004), and *People v Filip*, 278 Mich App 635; 754 NW2d 660 (2008), in which the Court of Appeals held that parole detainees are not entitled to jail credit under MCL 769.11b, the sentencing court denied the motion. The court also ruled that it lacked common law discretion to award credit because MCL 768.7a(2) mandates consecutive sentencing for parolees who commit new felonies while on parole. The Court of Appeals denied defendant's application for leave to appeal for lack of merit. *People v Idziak*, unpublished order of the Court of Appeals, issued July 25, 2008 (Docket No. 285975).

II. STANDARD OF REVIEW

This Court reviews questions of statutory interpretation de novo. *People v Stewart*, 472 Mich 624, 631; 698 NW2d 340 (2005). We also review

3

constitutional issues de novo. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003).

## III.  ANALYSIS

## A.  INTRODUCTION

The issue of appropriate jail credit arises when a person is convicted of a crime and sentenced to imprisonment, granted parole, and then convicted and sentenced to prison for a new felony committed while on parole.  After arrest, the parolee serves time in jail awaiting disposition of the new criminal charges.  The issue is whether, after conviction of the new criminal charges, the parolee receives credit against his *new minimum sentence* for the time he served in jail.  This is a significant problem because the prisoner's new parole eligibility date is affected.  If defendant here is awarded credit against his new minimum sentence for the 98 days he served in jail, he will become eligible for parole 98 days earlier than if he is not granted such credit.

## B.  THE DEPARTMENT OF CORRECTIONS AND THE PAROLE BOARD

The Department of Corrections (DOC) calculates the new parole eligibility date of a parolee sentenced to a new term of imprisonment for a felony committed while on parole.  The Parole Board has no discretion to grant parole until that date. The parties do not take issue with the practices of the DOC or the Parole Board. Understanding their functions is nevertheless critical to understanding the issue presented.

4

In general, a prisoner becomes subject to the jurisdiction of the Parole Board after he "has served a period of time equal to the minimum sentence imposed by the court . . . ." MCL 791.234(1). A prisoner sentenced to consecutive terms of imprisonment, "whether received at the same time or at any time during the life of the original sentence," is subject to the jurisdiction of the Parole Board "when the prisoner has served the total time of the added minimum terms . . . ." MCL 791.234(3). [2]

_____

[2] MCL 791.234(1) and MCL 791.234(3) apply to a prisoner "other than a prisoner subject to disciplinary time." Where such a prisoner is concerned, the parole eligibility calculation takes into account any "good time and disciplinary credits" the prisoner has earned. MCL 791.234(2) and MCL 791.234(4) apply to a prisoner "subject to disciplinary time." Although we refer to MCL 791.234(1) and MCL 791.234(3) throughout this opinion, our analysis and decision apply equally to both sets of provisions and both classes of prisoners because the language on which we rely appears in both sets of provisions.

A "prisoner subject to disciplinary time" includes (1) a "prisoner sentenced to an indeterminate term of imprisonment for" a listed offense committed on or after December 15, 1998, or any offense committed on or after that date that is not listed and is punishable by life imprisonment, MCL 800.34(5)(a), and (2) "a prisoner sentenced to an indeterminate term of imprisonment" for any crime that is not listed committed on or after December 15, 2000, MCL 800.34(5)(b).

MCL 791.234 provides, in relevant part:

(1) Except as provided in [MCL 791.234a], a prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years other than a prisoner subject to disciplinary time is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted, less good time and disciplinary credits, if applicable.

5

Before June 1, 1988, MCL 768.7a(1)[3] provided for consecutive sentencing for prison escapees and persons who committed crimes while in prison. Under

(2) Except as provided in [MCL 791.234a], a prisoner subject to disciplinary time sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted.

(3) If a prisoner other than a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms, less the good time and disciplinary credits allowed by statute. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served less good time and disciplinary credits, unless the prisoner is paroled and discharged upon satisfactory completion of the parole.

(4) If a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served, unless the prisoner is paroled and discharged upon satisfactory completion of the parole.

[3] Before the statute was amended in 1988, MCL 768.7a(1) provided:

A person who is incarcerated in a penal or reformatory institution in this state, or who escapes from that institution, and who commits a crime during that incarceration or escape which is punishable by imprisonment in a penal or reformatory institution in this state shall, upon conviction thereof, be subject to sentence therefor in the manner provided by law for such crimes. The term of

that provision and MCL 791.234(3),[4] the DOC had, for more than 40 years, "computed the eligibility for parole of an inmate who commits a crime in prison or an escapee who commits a crime while escaped by adding the consecutive minimum terms of all the offenses for which he is incarcerated in state prison." *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 579-580; 548 NW2d 900 (1996).

In 1988,[5] the Legislature added current MCL 768.7a(2), which provides:

> If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.

In *Wayne Co Prosecutor*, we considered the prosecutor's argument that MCL 768.7a(2) impliedly repealed MCL 791.238(5)[6] and MCL 791.234(3) because "the

---

> sentence imposed for the crime shall commence at the expiration of the term or terms of sentence which the person is serving or has become liable to serve in a penal or reformatory institution in this state.

MCL 768.7a(1), as amended by 1988 PA 48, now provides, in part: "The term of imprisonment imposed for the crime shall begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve in a penal or reformatory institution in this state."

[4] 1994 PA 217 renumbered former MCL 791.234(2) as MCL 791.234(3). The *Wayne Co Prosecutor* decision referred to this section as MCL 791.234(2) in order to remain consistent with the parties' briefs. *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 573 n 5; 548 NW2d 900 (1996).

[5] 1988 PA 48, effective June 1, 1988.

7

'remaining portion' clause of [MCL 768.7a(2)] . . . require[d] parolees who commit crimes while on parole to first serve the *maximum* of the earlier sentence before beginning to serve the new sentence." *Id*. at 574. We rejected that argument. Instead, we concluded that MCL 768.7a(2) extended to parolees the same consecutive sentencing treatment to which prisoners who committed crimes while incarcerated and escapees were subjected under former MCL 768.7a(1). *Id*. at 577-578. We saw no indication that the Legislature intended to alter the DOC's longstanding method of sentence calculation, as the prosecutor urged. *Id*. at 580-581. We held that

> the "remaining portion" clause of [MCL 768.7a(2)] requires the offender to serve at least the combined minimums of his sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve. [*Id*. at 584.]

Thus, in *Wayne Co Prosecutor*, we rejected the prosecutor's argument that MCL 768.7a(2) requires a parolee to serve his entire original *maximum* sentence, *plus* his new minimum sentence, before becoming eligible for parole, and held that the DOC's practice of calculating the new parole eligibility date, as mandated by MCL 791.234(3), was consistent with MCL 768.7a(2).

As the parties acknowledge, neither the DOC nor the Parole Board has sentencing authority. The DOC calculates the prisoner's new parole eligibility

---

[6] MCL 791.238(5) provides: "A prisoner committing a crime while at large on parole and being convicted and sentenced for the crime shall be treated as to the last incurred term as provided under [MCL 791.234]."

8

date after sentencing. Under MCL 791.234(3), the Parole Board lacks jurisdiction over the prisoner until he reaches that new parole eligibility date. In general, a parolee will have already served his original minimum sentence,[7] so he will become *parole eligible* after serving his new minimum sentence. At that point, the Parole Board has jurisdiction to decide whether the prisoner is *worthy* of parole. MCL 791.234(3). The issue here is not the practices of the DOC or the Parole Board, but whether the sentencing court is required or authorized, under MCL 769.11b or as a matter of common law discretion, to grant defendant credit against his new minimum sentence for the time he served in jail following his arrest for the new offenses and before his sentencing for those offenses.

## C. THE JAIL CREDIT STATUTE

Michigan's sentencing credit statute, MCL 769.11b, provides:

---

[7] In general, the parolee will already have served his minimum sentence in order to be eligible for parole, so he will be considered to be serving time against his original maximum sentence. As we explained in *Wayne Co Prosecutor*, however,

> [MCL 791.233(1)(b)] permits "special parole" of a prisoner [other than a prisoner subject to disciplinary time, see MCL 791.233(1)(d)] "whenever the sentencing judge . . . gives written approval of the parole of the prisoner before the expiration of the minimum term of imprisonment."
>
> A special parolee who commits another offense while on parole thus will ordinarily have some time left to serve on the minimum of the earlier sentence before beginning service of the new minimum sentence. [*Wayne Co Prosecutor*, *supra* at 581.]

Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

Although this Court has not considered whether the statute applies to parolees, we considered its applicability in a related context in *People v Prieskorn*, 424 Mich 327; 381 NW2d 646 (1985). There the defendant posted bond for marijuana charges and was arrested while on bond for a driving offense. He was later incarcerated and began serving a 90-day sentence for the driving offense. In the case before this Court, he sought credit toward the sentence for the marijuana conviction for 51 days of the confinement he had served under the sentence for the driving offense. *Id*. at 343. We held that the jail credit statute "neither requires nor permits sentence credit" in cases in which a defendant released on bond after being charged with one offense is subsequently incarcerated as a result of charges arising out of an unrelated offense "and then seeks credit in the former case for that latter period of confinement." *Id*. at 340. "Had the Legislature intended that convicted defendants be given sentence credit for all time served prior to sentencing day, . . . it would not have conditioned and limited entitlement to credit to time served 'for the offense of which [the defendant] is convicted.'" *Id*. at 341. We concluded:

> To be entitled to sentence credit for presentence time served, a defendant must have been incarcerated "for the offense of which he is convicted." Since the fifty-one days of incarceration for which

10

the defendant seeks credit is unrelated to the offense before us for which he has been convicted, he is not entitled to sentence credit for that confinement. [*Id*. at 344.]

In *People v Adkins*, 433 Mich 732, 739; 449 NW2d 400 (1989), we applied *Prieskorn* to a case in which the defendant was released on bond after being charged with armed robbery and, before trial and conviction of the armed robbery charge, was arrested and convicted of two unrelated stolen property offenses in two other jurisdictions and began serving sentences for those convictions. We held that when, "as here, the defendant has served time not as a result of his inability to post bond for the offense for which he seeks credit, but because of his incarceration for another offense, [MCL 769.11b] is simply not applicable." *Id*. at 751.

Relying on *Prieskorn*, the Court of Appeals recently held that the jail credit statute does not apply to parolees. *Seiders* held that a parolee arrested for a new criminal offense is entitled to jail credit exclusively toward the sentence from which parole was granted and not toward the new sentence. *Seiders*, *supra* at 705-708. The Court cited *Prieskorn*, *supra* at 340-341, for the proposition that MCL 769.11b "does not . . . entitle a defendant to credit for time served before sentencing if he is incarcerated for an offense other than that for which he is ultimately convicted, or for other unrelated reasons." *Seiders*, *supra* at 706-707. It reasoned that because a "defendant is only entitled to a sentencing credit under MCL 769.11b if he has been '*denied or unable to furnish bond*'" and "bond is

11

neither set nor denied when a defendant is held in jail on a parole detainer," MCL

769.11b does not apply to a parole detainee. *Id*. at 707 (emphasis in *Seiders*). The

Court of Appeals reaffirmed *Seiders* in *People v Stead*, 270 Mich App 550; 716

NW2d 324 (2006), and *Filip*. *Filip*, following *Seiders*, held that "MCL 769.11b is

inapplicable under circumstances where a parolee is held on new charges that

constitute a parole violation." *Filip*, *supra* at 641. The Court reasoned:

> MCL 791.238(1) provides that a parolee remains legally in the custody of the Department of Corrections, and that "[p]ending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated." This provision unambiguously declares that parole violators cannot avoid confinement pending resolution of the violation proceedings. Such a period of incarceration thus constitutes part of the original sentence and in that sense is credited against it. Moreover, "denied," as used in MCL 769.11b, implies the exercise of discretion, not the recognition of outright ineligibility. For that reason, MCL 769.11b simply does not apply to parole detainees. Therefore, the trial court erred in setting bond for Filip in the first instance. Simply put, the erroneously granted possibility of posting bond did not secure Filip any rights under MCL 769.11b. In sum, contrary to the trial court's ruling, *Seiders* governs and must be applied. [*Id*. at 641-642.]

Although we reach essentially the same conclusion as the Court of Appeals

did in *Seiders* and *Filip*—that the jail credit statute does not generally apply to

parolees who commit new felonies while on parole—we do so on the basis of a

somewhat different analysis. Consistent with our reasoning in *Adkins*, we hold

that the jail credit statute does not apply to a parolee who is convicted and

sentenced to a new term of imprisonment for a felony committed while on parole

because, once arrested in connection with the new felony, the parolee continues to

serve out any unexpired portion of his earlier sentence unless and until discharged

by the Parole Board. For that reason, he remains incarcerated regardless of whether he would otherwise be eligible for bond before conviction on the new offense.[8] He is incarcerated not "because of being denied or unable to furnish

_____

[8] Subject to several exceptions, the general rule under the Michigan Constitution is that all persons are entitled to bail *before* conviction. A parolee is, of course, in the *post*-conviction stage with respect to the earlier conviction from which he was paroled.

Article 1, § 15 of the Michigan Constitution of 1963, which addresses eligibility for bond, provides in relevant part:

> No person shall be subject for the same offense to be twice put in jeopardy. All persons shall, *before* conviction, be bailable by sufficient sureties, except that bail may be denied for the following persons when the proof is evident or the presumption great:

> (a) A person who, within the 15 years immediately preceding a motion for bail pending the disposition of an indictment for a violent felony or of an arraignment on a warrant charging a violent felony, has been convicted of 2 or more violent felonies under the laws of this state or under substantially similar laws of the United States or another state, or a combination thereof, only if the prior felony convictions arose out of at least 2 separate incidents, events, or transactions.

> (b) A person who is indicted for, or arraigned on a warrant charging, murder or treason.

> (c) A person who is indicted for, or arraigned on a warrant charging, criminal sexual conduct in the first degree, armed robbery, or kidnapping with intent to extort money or other valuable thing thereby, unless the court finds by clear and convincing evidence that the defendant is not likely to flee or present a danger to any other person.

> (d) A person who is indicted for, or arraigned on a warrant charging, a violent felony which is alleged to have been committed while the person was on bail, pending the disposition of a prior violent felony charge or while the person was on probation or parole

13

bond" for the new offense, but for an independent reason. Therefore, the jail credit statute, MCL 769.11b, does not apply.[9]

Once a prisoner has served his minimum sentence, the Parole Board has jurisdiction over the prisoner and has discretion to grant parole. MCL 791.234(1). While on parole, the prisoner "shall be considered to be serving out the sentence imposed by the court," MCL 791.238(6),[10] but he "remain[s] in the legal custody and under the control of the department," MCL 791.238(1).[11] When there has

---

as a result of a prior conviction for a violent felony. [Emphasis added.]

See also MCR 6.106(B) (pretrial release/custody under Const 1963, art 1, § 15).

[9] Despite Justice Markman's lengthy criticism of *Prieskorn*, *post* at 9-10, it—along with *Adkins*—remains binding precedent. In any event, we base our analysis on the language of MCL 769.11b, which requires jail credit when the defendant serves time in jail "because of being denied or unable to furnish bond for the offense of which he is convicted . . . ." A parolee who commits a new crime while on parole serves time in jail *because* he is serving out his earlier maximum term of imprisonment, not "because of being denied or unable to furnish bond for the [new] offense."

[10] MCL 791.238(6) provides:

A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court and, if he or she is eligible for good time, shall be entitled to good time the same as if confined in a state correctional facility.

As explained in n 7 of this opinion, a prisoner granted parole will generally have already served his minimum sentence, so he is considered to be serving time against his original maximum sentence.

[11] MCL 791.238 provides, in relevant part:

14

been a "probable violation of parole," the DOC may issue a warrant for the parolee's return. MCL 791.238(1). Moreover, if "reasonable grounds" exist to believe that the parolee violated his parole, he may be "arrested without a warrant and detained in any jail of this state." MCL 791.239.[12]

Under MCL 791.238(2), a "prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the

(1) Each prisoner on parole shall remain in the legal custody and under the control of the department. The deputy director of the bureau of field services, upon a showing of probable violation of parole, may issue a warrant for the return of any paroled prisoner. Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.

(2) A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment. The time from the date of the declared violation to the date of the prisoner's availability for return to an institution shall not be counted as time served. The warrant of the deputy director of the bureau of field services is a sufficient warrant authorizing all officers named in the warrant to detain the paroled prisoner in any jail of the state until his or her return to the state penal institution.

[12] MCL 791.239 provides:

A probation officer, a parole officer, a peace officer of this state, or an employee of the department other than a probation or parole officer who is authorized by the director to arrest parole violators may arrest without a warrant and detain in any jail of this state a paroled prisoner, if the probation officer, parole officer, peace officer, or authorized departmental employee has reasonable grounds to believe that the prisoner has violated parole or a warrant has been issued for his or her return under [MCL 791.238].

15

bureau of field services[13] . . . *is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment*," but the "time from the date of the declared violation to the date of the prisoner's availability for return to an institution shall not be counted as time served." (Emphasis added.) Because a paroled prisoner is considered to be serving his sentence as long as he remains in compliance with the terms of his parole, MCL 791.238(6), *except* "from the date of the declared violation to the date of the prisoner's availability for return to an institution," MCL 791.238(2),[14] the second part of MCL 791.238(2) establishes that the time *after* "the date of the prisoner's availability for return to an institution" *is* to be counted as time served against the parolee's original sentence. For a prisoner paroled and arrested again in Michigan, the parolee's "date of . . . availability" is effectively the date of his arrest. See *Browning v Michigan Dep't of Corrections*, 385 Mich 179, 188-189; 188 NW2d 552 (1971).[15] The phrase

---

[13] Although this provision mentions a warrant issued by the DOC, the prosecutor stated at oral argument that the DOC does not always issue a warrant. As noted earlier, a parolee may be arrested without a warrant and detained if there are "reasonable grounds" to believe that he has violated his parole. MCL 791.239.

[14] This provision is often referred to as the "dead time" statute.

[15] *Browning* held that "the phrase 'date of availability' means actual *or* constructive availability for return to the Michigan penal system." *Browning*, *supra* at 189. *Browning* was decided before consecutive sentencing was mandated for parolees who commit new felonies while on parole. Also, as we noted in *Browning*, before 1968, the "dead time" statute—that is, the statute defining the time that will not be counted as time served for a parolee—used the language "date of arrest" instead of "date of . . . availability." *Id*. at 187. Our decision in *Browning* addressed the disparity created between in-state and out-of-state parolees that resulted from the DOC's interpretation of "date of . . . availability"

16

"date of . . . availability" indicates that the parolee resumes serving his earlier term of imprisonment when arrested and detained in jail even though he has not yet been returned to the physical custody of the DOC.

In sum, under MCL 791.238(2), the parolee is "liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment" and actually resumes serving that term of imprisonment on the date of his availability for return to the DOC, which in this case is synonymous with the date of his arrest.[16] The parolee is not incarcerated "because of being denied or unable to

when an out-of-state detainee was concerned. A 1969 DOC policy directive instructed that, for an alleged parole violator arrested outside of Michigan, "the date of availability will be the date on which the authorities in the holding jurisdiction declare the alleged violator to be available for return to Michigan." See *id.* at 191. We noted that this interpretation effectively imposed consecutive sentencing on an out-of-state parolee and repudiated the DOC's interpretation of "date of . . . availability" in this context. *Id.* at 189. We held that "the phrase 'date of availability' means actual *or* constructive availability for return to the Michigan penal system. The arrest of a parolee, irrespective of the location of the arrest, coupled with issuance of a parole violation warrant and good faith effort to retake the parolee constitutes constructive availability." *Id.*

[16] Under Justice Markman's interpretation of MCL 791.238(2), one does not know whether the time served in jail is to be considered time served against the parolee's original maximum sentence until the parolee is convicted or acquitted of the new criminal charges. At that point, if the parolee is acquitted, "the Parole Board must then make a new determination regarding how much of the 'unexpired portion' of the defendant's original sentence must be served before the defendant can once again be paroled." *Post* at 10-11. Only "[i]f the Board determines that the defendant does have to serve an unexpired portion" will a defendant who is "'liable' to serve the 'unexpired portion'" of his original sentence be considered to have served the time in jail against his original maximum sentence. *Post* at 11. As explained in part V of this opinion, Justice Markman's analysis is based on a nonexistent statutory requirement. It is also unnecessary. The meaning of "liable . . . to serve" is found within MCL 791.238(2) itself: the parolee becomes liable, upon arrest, to resume serving his

17

furnish bond for the offense of which he is convicted . . . ." MCL 769.11b.

Because the parolee is required to remain in jail pending the resolution of the new

criminal charge for reasons independent of his eligibility for or ability to furnish

bond for the new offense, the jail credit statute does not apply.[17]

___

original maximum sentence and actually resumes serving it when he becomes "available"—actually or constructively—to the DOC.

See also the brief of the DOC as amicus curiae in response to defendant-appellant's application for leave to appeal in the case of *People v Wright*, 474 Mich 1138 (2006) (Docket No. 128424), at 5 ("Once the prisoner becomes parole eligible, the focus of the [DOC] is to keep track of the remaining maximum sentence. When the prisoner is granted a parole, each day on parole counts toward the service of the maximum sentence as well. Even if a parole is revoked, the time spent on parole is counted towards the service of the maximum sentence. *The only time the service of a sentence is suspended or stopped is if the prisoner escapes from prison* [see MCL 800.61] *or if as a parolee the prisoner absconds from parole supervision* [see MCL 791.238(2)].") (emphasis added).

[17] We caution that, for a parolee who reached his maximum discharge date while being held in jail, this independent reason would be removed. If the parolee was then "denied or unable to furnish bond," the sentencing court would be required to grant jail credit under MCL 769.11b.

See DOC Policy Directive No. 06.06.100, Parole Violation Process, § B (February 26, 2007) ("If a parolee approaching his or her potential maximum date is believed to have violated a condition of parole, the parole violation process set forth in this policy will be expedited to ensure it is completed prior to that date. Under no circumstances shall a parolee be held on pending parole violation charges beyond his/her maximum discharge date."). The version of the policy directive in effect in 2006 contained an identical provision.

This exception does not apply here because defendant was not nearing his maximum discharge date at the time of his arrest. According to information available on the DOC's Offender Tracking Information System, defendant's maximum discharge date before the new sentences were imposed was 2024 (defendant's current maximum discharge date is listed as 2076, and his combined maximum for the new sentences is 52 years). See <http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=124501> (accessed July 30, 2009).

In this case, defendant was paroled on May 10, 2005, from multiple felony convictions. He committed the instant offenses on November 23, 2006, and was arrested on November 28, 2006. He remained in jail until sentencing on March 6, 2007, when he was returned to prison. He now seeks credit for those 98 days against his new minimum sentence. Under MCL 791.238(2), however, defendant resumed serving the remaining portion of his earlier sentences when he was arrested. He was not serving time in jail "because of being denied or unable to post bond" for the new offense, MCL 769.11b, so the jail credit statute does not apply. [18]

## D. SENTENCING COURT DISCRETION TO GRANT JAIL CREDIT

We also reject defendant's argument that a sentencing court retains discretion to grant credit[19] regardless of the applicability of the jail credit statute.[20] As explained, the statutory scheme pertaining to parolees dictates that defendant's 98 days in jail were served against his original maximum sentence. The sentencing court had no discretionary authority to circumvent the operation of the statutory scheme. MCL 769.11b "neither requires nor permits" sentencing credit except as provided in the statute. *Prieskorn*, *supra* at 340. "The enactment of

---

[18] The court set a $500,000 bond in this case.

[19] Before the Legislature enacted the jail credit statute, a criminal defendant had no right to sentencing credit, and the matter was left to the discretion of the sentencing court. *Prieskorn*, *supra* at 333.

[20] Although there is language to the contrary in *Adkins*, *supra* at 751 n 10, the Court was not considering consecutive sentencing in that case.

[MCL 769.11b] reflects the Legislature's intention to entitle every defendant in a criminal case to the sentence credit described in the statute, instead of leaving the matter to the discretion of sentencing courts." *Id.* at 333, see also *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006), quoting *Millross v Plum Hollow Golf Club*, 429 Mich 178, 183; 413 NW2d 17 (1987), citing 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441 ("'In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter.'"). Accordingly, the sentencing court lacked the authority to grant defendant credit against his new minimum sentence.

## E. CONSTITUTIONAL CHALLENGES

Defendant also claims that he was subjected to "multiple punishments" in violation of the double jeopardy clauses of the United States and Michigan constitutions. US Const, Am V; Const 1963, art 1, § 15. We disagree. "The double jeopardy clauses of the United States and Michigan constitutions protect against governmental abuses for both (1) multiple prosecutions for the same offense after a conviction or acquittal and (2) multiple punishments for the same offense." *People v Calloway*, 469 Mich 448, 450; 671 NW2d 733 (2003). Defendant claims that because he did not receive credit for the time he spent in jail awaiting sentencing on the new offenses, he "spent his time in jail awaiting

20

conviction and sentence as a separate, additional term for the latter offense." This is incorrect. As explained, defendant continued to serve out his earlier sentence after he was arrested. He was not subjected to multiple terms of confinement for his new offenses.

Finally, defendant claims that denying credit toward a parolee's new minimum sentence violates due process[21] and equal protection guarantees because it results in unequal treatment of similarly situated defendants.[22] US Const, Am XIV, § 1; Const 1963, art 1, §§ 2 and 17. We reject defendant's contention.

The equal protection clauses of the United States and Michigan Constitutions are coextensive. *Harvey*, *supra* at 6. Unless the legislation at issue creates a classification based on "suspect" factors such as race, national origin, or ethnicity, which trigger the highest level of review ("strict scrutiny"), or factors such as gender or illegitimacy, which require an intermediate level of review ("heightened scrutiny"), it is reviewed under a rational basis standard. *Id*. at 7-8. Defendant acknowledges that rational basis review applies here.

Under rational basis review, "'the statute is presumed constitutional, and the party challenging it bears a heavy burden of rebutting that presumption.'" *Id.*

---

[21] The substance of defendant's argument focuses on equal protection; he does not separately address the requirements of due process.

[22] In his brief, defendant does not take issue with the DOC's practices, but with sentencing courts' denial of credit: "Disparity is created not by the MDOC parole violation process, but by the judicial practice to date of denying jail credit to parolees who commit new crimes. This practice is anchored by the belief that such offenders do receive credit, they just receive it somewhere else."

21

at 7 (citation omitted). "To prevail under this highly deferential standard of review, a challenger must show that the legislation is arbitrary and wholly unrelated in a rational way to the objective of the statute." *Id*. (quotation marks and citations omitted). "'Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with "mathematical nicety," or even whether it results in some inequity when put into practice.'" *Id*. (citation omitted).

As is significant to each of defendant's constitutional arguments, parolees are situated differently from nonparolee criminal defendants and, as a result, they do not always enjoy the same "panoply of rights." See *Morrissey v Brewer*, 408 US 471, 480; 92 S Ct 2593; 33 L Ed 2d 484 (1972) ("[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."). A parolee is only conditionally permitted to leave prison on parole. Parole is "a permit to the prisoner to leave the prison, and not . . . a release," and "[w]hile at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court . . . ." MCL 791.238(6). He "remain[s] in the legal custody and under the control of the department." MCL 791.238(1). As this Court explained in *In re Eddinger*, 236 Mich 668, 670; 211 NW 54 (1926), the

> purpose of a parole is to keep the prisoner in legal custody while permitting him to live beyond the prison enclosure *so that he may have an opportunity to show that he can refrain from committing crime*. It is a conditional release, the condition being that if he makes good he will receive an absolute discharge from the balance of his

sentence; but if he does not make good he will be returned to serve his unexpired time. [Emphasis added.]

See also *Jones v Dep't of Corrections*, 468 Mich 646, 651; 664 NW2d 717 (2003) ("A prisoner enjoys no constitutional or inherent right to be conditionally released from a validly imposed sentence.").

Defendant claims that the denial of credit against a parolee's new minimum sentence results in unequal treatment in two ways: first, it creates a disparity between parolees and nonparolees because the latter are granted credit, while the former are not, and, second, it creates a disparity among parolees based on the decision to plead guilty and other "arbitrary" factors that affect the parolee's sentencing date.

The first claimed disparity arises from the application of the jail credit statute, MCL 769.11b. As we have explained, this statute does not apply to parolees upon their arrest for new crimes. Rather, parolees are granted credit against their earlier sentences for time served in jail under MCL 791.238(2). Thus, both parolees and nonparolees receive credit for time served. Defendant may prefer credit on his new sentence, but this is not what the statutes require. And it is entirely rational for the Legislature to treat parolees and nonparolees differently in this regard because parolees are continuing to serve out existing prison sentences after being granted mere conditional releases.

Second, defendant claims that denial of credit results in a disparity among parole violators based on the choice between a guilty plea and a jury trial, as well

23

as other "arbitrary" factors, such as the degree of docket congestion. No statute, including MCL 791.238(2), the jail credit statute, MCL 769.11b, and MCL 791.234(3), which sets forth the method for computing the new parole eligibility date, makes a distinction between a parolee who pleads guilty and one who chooses to go to trial. Even if the Legislature had created such a distinction, the United States Supreme Court has stated that "there is no *per se* rule against encouraging guilty pleas" and has "squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea." *Corbitt v New Jersey*, 439 US 212, 218-219; 99 S Ct 492; 58 L Ed 2d 466 (1978). Moreover, this Court rejected a similar claim in *Prieskorn*, *supra* at 341-342:

> It may be that for defendants who find themselves incarcerated for multiple unrelated offenses, one of the motivations to plead guilty to some of the charges is the desire to accelerate the imposition of sentence in order to benefit, as much as possible, from Michigan's concurrent sentencing law. But that ingredient of a given defendant's motivation derives from the peculiar facts with which the defendant facing multiple charges is confronted and not, we think, from limiting application of the sentence credit statute to those circumstances described by its terms. We think it is clear that the Legislature sought, by the statute, to give a criminal defendant a right to credit for any presentence time served upon "the offense of which he is convicted." Judicial obedience to the language of the legislation may, incidentally, indeed coincidentally, have the effect of motivating a defendant, who is charged with multiple offenses and who has posted bond for one offense and was released, but who is incarcerated for a second offense, to waive his right to trial and proceed to plead guilty in the first case in order to get the sentencing clock running on that conviction while awaiting final disposition of the offense for which he is denied bond, or final resolution of an unrelated "hold" or "detainer." However, that motivation does not change the language of the statute and should not be judicial excuse for applying the statute to situations to which it does not extend.

24

To the extent the denial of credit against the new minimum sentence results in some parole violators reaching their parole eligibility dates earlier than others on the basis of "arbitrary" factors such as docket congestion or a judge's illness, this does not amount to a violation of equal protection. Any difference in treatment does not arise from any classification created by the Legislature, and even when *suspect* factors are involved, a disparate impact created by facially neutral legislation does not necessarily amount to a violation of the Equal Protection Clause. See *Washington v Davis*, 426 US 229, 242; 96 S Ct 2040; 48 L Ed 2d 597 (1976). Further, because of parolees' unique status, defendant fails to meet the heavy burden of rebutting the presumption of constitutionality on this issue.[23]

---

[23] In his dissenting opinion, Justice Markman asserts that

> the Parole Board's current practice of failing to undertake its statutory responsibilities, passively waiting for a defendant to be convicted of a new crime, and then mechanically concluding that the amount of time a defendant has spent awaiting trial on his new offense automatically constitutes the remaining portion of the original sentence that the defendant must serve, treats identically situated defendants in a sometimes widely disparate fashion . . . . [*Post* at 27.]

Justice Markman's arbitrariness concern is grounded in his misconception of the statutory responsibilities of the Parole Board. As explained in part V of this opinion, parole eligibility is purely a function of statute. We acknowledge that factors such as docket congestion and a judge's illness affect the date a parolee is sentenced for a new offense, the date he begins serving his new sentence, and, consequently, his new parole eligibility date. But this arises from the operation of the statutory scheme, not from any action—or inaction—of the Parole Board. As Justice Markman acknowledges, *post* at 28 n 11, some arbitrariness will always inhere in the criminal process.

25

F.  EXAMPLE CALCULATION

As a simple illustration of how the statutory scheme operates to give credit against a parole violator's original maximum sentence, consider this example.  An offender is sentenced to 1 to 10 years in prison.  He is granted parole after serving his minimum sentence.  No time remains on his minimum sentence, and 9 years remain on his maximum sentence.  After 2 years on parole, he commits an act that gives rise to a new felony charge.  After a week of "dead time" during which he is not serving time against his prior sentence, he is arrested on the new felony charge

---

Even Justice Markman's interpretation of the statutory scheme does not remove all arbitrariness.  Justice Markman posits that when the parolee is acquitted of the new criminal charges, "the Parole Board must then make a new determination regarding how much of the 'unexpired portion' of the defendant's original sentence must be served before the defendant can once again be paroled.  If the Board determines that the defendant does have to serve an unexpired portion of his initial sentence, the defendant will then be awarded credit for time served on his original sentence." *Post* at 10-11 (citations omitted).

To illustrate the arbitrariness that may result, assume Parolee A and Parolee B are each arrested on the same date and charged on the same date with new criminal offenses allegedly committed while on parole.  Both decide to go to trial and serve time in jail awaiting trial.  Parolee A's jury trial is held one month after his arrest, and he is acquitted.  Parolee B's trial is delayed for one year because of docket congestion, a judge's illness, or continuances requested by the prosecution for reasons unrelated to Parolee B's case.  Parolee B is also acquitted.  According to Justice Markman's theory, the Parole Board is in each case required to determine after acquittal whether the parolee is required to serve an "unexpired portion" of his original sentence and, if so, how much.  Assume that in the case of each parolee, the Parole Board does so and determines that neither is required to serve any "remaining portion."  Thus, under Justice Markman's theory, Parolee A is eligible for parole one month after arrest, while Parolee B is eligible for parole one year after arrest.  Even if both receive credit against their original maximum sentences for the time served in jail, Parolee B has suffered parole eligibility consequences for arbitrary reasons.

26

and again begins serving the remaining portion of the prior sentence. At that time, he has 7 years remaining on his maximum. He spends 1 year in jail awaiting trial, conviction, and sentencing on the new offense. Accordingly, on his sentencing date, 6 years remain of his original maximum term. He receives a 2- to 5-year term of imprisonment for the new offense.

Under MCL 791.234(3), the DOC calculates the new parole eligibility date by adding the original minimum term and the new minimum term. Because the offender has already served his entire original minimum term, his new parole eligibility date is 2 years from the date of sentencing on the new offense. The DOC calculates the new maximum discharge date by adding the new maximum sentence imposed by the court (5 years) to the offender's original maximum sentence (10 years). Thus, the offender's new maximum term is 15 years. Because he has already served 4 years of his original maximum sentence, the offender's new maximum term will expire 11 years from the date the new sentence was imposed.

## IV. RESPONSE TO CHIEF JUSTICE KELLY

Chief Justice Kelly agrees that defendant is not entitled to jail credit under MCL 769.11b, but bases her analysis on an interpretation of MCL 791.234(3)[24] that leads to an illogical result, fails to account for the broader statutory scheme,

---

[24] As the Chief Justice notes, her analysis applies equally to MCL 791.234(3) and MCL 791.234(4). *Post* at 2 n 2. Our response also applies to both subsections. For consistency, we will continue to refer to MCL 791.234(3).

27

and is contrary to the longstanding practice of the DOC approved by this Court in *Wayne Co Prosecutor*.

When a prisoner is paroled after serving his original minimum sentence and serves time on parole before committing a subsequent offense while on parole, Chief Justice Kelly's interpretation of MCL 791.234(3) would effectively allow the offender to begin serving his new minimum sentence *before he commits the offense* for which that sentence was imposed. In some cases, this will mean that the offender will, for parole eligibility purposes, have served his entire new minimum sentence before committing the crime. To illustrate, take an offender who commits offense A and is sentenced to a term of 2 to 10 years in prison. After serving his 2-year minimum term, he is paroled. After 7 years on parole (9 years into his maximum sentence), the offender commits offense B and is immediately arrested. He immediately pleads guilty and is sentenced to a term of 2 to 10 years in prison for offense B. Chief Justice Kelly posits that MCL 791.234(3) requires us to simply add all the time the offender has served since the imposition of the sentence for offense A—whether in prison, on parole, or awaiting disposition of the new criminal charges—to determine the offender's new parole eligibility date. Under this approach, the offender here became eligible to be paroled from his sentence for offense B after serving 4 years—*5 years before he committed offense B*. We disagree with Chief Justice Kelly that this is what MCL 791.234(3) requires. MCL 791.234(3) states that for a prisoner "sentenced for consecutive terms," the Parole Board has jurisdiction "when the prisoner has

28

served the total time of the added minimum terms . . . ." The DOC's longstanding practice of calculating a prisoner's new parole eligibility date, reflected in our example calculation above and throughout our analysis, ensures that the parolee serves "the total time of the added minimum terms" while also accounting for the broader statutory scheme applicable to parolees sentenced to consecutive terms of imprisonment.[25]

Moreover, MCL 791.238(6) provides that "[w]hile at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court . . . ." Nothing in MCL 791.238(6) indicates that time a prisoner spends on parole from the original offense may be counted as time served against a new minimum sentence not yet imposed, for a crime not yet committed. On the contrary, "*serving out* the sentence *imposed* by the court" indicates that the paroled prisoner continues to serve the sentence or sentences that exist at the time he is on parole—the sentences he began serving in prison and from which he was paroled. To use the example provided by Chief Justice Kelly, *post* at 12, a defendant may serve time toward his maximum terms for two separate consecutive sentences under the right circumstances. When a defendant is paroled *after* being

---

[25] Chief Justice Kelly attempts to support her interpretation with an inapt comparison to a first-time offender being awarded jail credit for time served before his sentence is imposed. *Post* at 10-11. In the case of first-time offenders, the Legislature *explicitly allowed* that result by enacting MCL 769.11b. Nothing in the plain language of MCL 769.11b, however, suggests that credit may be applied to a time before the sentencing offense was even committed. Accordingly, Chief Justice Kelly's example is inapposite.

29

convicted of a second offense and sentenced to a consecutive term of imprisonment, the defendant is then actually serving out the combined maximum term for the first and second offenses as calculated under MCL 791.234(3). Contrary to Chief Justice Kelly's assertion, however, if the defendant commits a third offense while on parole from the first and second offenses, the court may not apply time served on parole *before committing the third offense* toward the sentence that will be imposed in the future for the third conviction. As noted *earlier*, this contravenes the plain language of MCL 791.238(6).

Similarly, MCL 791.238(2) provides that a prisoner who violates the terms of his parole "is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment." As previously discussed, the prisoner resumes serving that unexpired portion of his original maximum term on the date he becomes available for return to the DOC—in this case, the date of his arrest. MCL 791.238(2) indicates that, after he is arrested and becomes available for return to the DOC, the offender is serving out his original maximum sentence—not his yet-to-be-imposed new minimum sentence. Thus, we disagree with Chief Justice Kelly that "an affirmative and individualized determination [by the Parole Board] is the only proper mechanism for requiring the prisoner to serve additional time only toward his maximum term." *Post* at 7-8.

Finally, Chief Justice Kelly's interpretation of MCL 791.234(3) is inconsistent with *Wayne Co Prosecutor*. The defendant in that case was originally

30

sentenced to 6 to 15 years in prison. He was paroled after serving about 6 years and 2 months in prison. After nearly 2 years on parole, the defendant committed another offense for which he was sentenced to 3½ to 10 years in prison. Before turning to the effect of newly enacted MCL 768.7a(2), we noted that

> [i]f the foregoing statutory provisions [MCL 791.234(3) and MCL 791.238(5)] were the only provisions applicable, [the defendant] clearly *could be paroled after serving three and a half years* on the breaking and entering conviction. He had already served more than the six-year minimum imposed for the armed robbery conviction before he was returned to prison. [*Wayne Co Prosecutor*, *supra* at 573 (emphasis added).]

We rejected the prosecutor's contention that MCL 768.7a(2) impliedly repealed MCL 791.234(3) and MCL 791.238(5) and held that MCL 768.7a(2) extended to parolees the same consecutive sentencing treatment to which prisoners who commit crimes while incarcerated and escapees were subjected under former MCL 768.7a(1). *Id*. at 577-578. We explained the DOC's longstanding method of calculating the new parole eligibility date as follows:

> For over forty years, the department has computed the eligibility for parole of an inmate who commits a crime in prison or an escapee who commits a crime while escaped by adding the consecutive minimum terms of all the offenses for which he is incarcerated in state prison. Thus, consecutive sentences imposed on persons who, while incarcerated or on escape, commit another crime will commence to run when the total of the *minimum* sentences imposed for prior offenses has been served. Accordingly, *if an inmate or escapee, who has served beyond his minimum term, commits an offense while incarcerated or while on escape, the "consecutive" sentence would commence to run immediately*. [*Id*. at 579-580 (second emphasis added).]

31

Thus, in *Wayne Co Prosecutor*, we understood MCL 791.234(3), MCL 791.238(5), and MCL 768.7a(2) to mean that if a parolee sentenced to a consecutive term of imprisonment for a crime committed while on parole had already served his original minimum sentence, his new minimum sentence would begin to run *immediately*. We did not suggest that a parolee could begin serving his new minimum sentence *before* committing the crime for which it was imposed.

The DOC's longstanding method of calculating a prisoner's new parole eligibility date yields logical results, complies with MCL 791.234(3), and is consistent with the statutory scheme relevant to parolees sentenced to consecutive terms of imprisonment for crimes committed while on parole. We approved the DOC's practice as consistent with the consecutive sentencing mandate of MCL 768.7a(2) in *Wayne Co Prosecutor*, and neither party here takes issue with the practices of the DOC or the Parole Board. We find it puzzling that Chief Justice Kelly would replace the DOC's practice with an approach that yields illogical results, is inconsistent with *Wayne Co Prosecutor*, and fails to account for the relevant statutory scheme.

## V. RESPONSE TO JUSTICE MARKMAN

Justice Markman constructs his analysis around a misconception that the Parole Board is statutorily required to make a "remaining portion" determination after a parolee is convicted or acquitted of a new crime allegedly committed while

32

on parole. He posits that the Parole Board is required to decide how much, if any, of a defendant's unexpired original maximum sentence he would otherwise (absent the second sentence) be required to serve before becoming eligible for parole. But parole eligibility is a function of statute, not Parole Board discretion, and there is no statutory requirement that the Parole Board make the affirmative determination Justice Markman proposes.

Justice Markman's theory proceeds as follows. A prisoner is granted parole once he has served his minimum term of imprisonment. MCL 791.234(1). After his arrest for allegedly committing a new crime while on parole, the offender serves time in jail. Depending on whether the offender is convicted or acquitted, he may be serving that time against his original maximum sentence or his yet-to-be imposed new minimum sentence. Once the offender is convicted or acquitted of the new criminal charge, the Parole Board is required to convene and make an affirmative determination about what, if any, "remaining portion" of his original sentence the offender must serve before becoming eligible for parole (if acquitted) or beginning to serve his new sentence (if convicted). If the offender is acquitted of the new criminal charge, the time served in jail will be credited against his original maximum sentence. If the offender is convicted of the new offense, however, the offender is not considered to have been serving his original maximum sentence while in jail. Instead, he must be granted credit against his new minimum sentence under MCL 769.11b. That credit must be "*awarded* as a component of the second offense," but it "cannot actually be *applied* until the

33

second sentence is commenced." Accordingly, the new sentence is "suspended until the defendant serves the remaining portion of his original sentence." Once the defendant has served that "remaining portion," he begins serving his new sentence and the jail credit is applied.

Aside from the problem of its astounding complexity, this interpretation is premised on a nonexistent statutory requirement. Recall that a prisoner is generally eligible for parole when he has "served a period of time equal to the minimum sentence imposed by the court . . . ." MCL 791.234(1).[26] Justice Markman asserts that, after conviction or acquittal of the new criminal charges, the Parole Board is required to "make an affirmative determination of whether the defendant is required to serve any remaining portion on his original sentence . . . ." *Post* at 19. He explains that "when the Parole Board determines the remaining portion of a defendant's original sentence, it is essentially undertaking a discretionary decision about when the defendant would have been eligible for parole on his original sentence given the violation he committed while on parole." *Post* at 15. Thus, Justice Markman's analysis is based on the idea that the parole board is required to determine how much time a parolee who violates his parole, but is not convicted of a second crime in connection with that parole violation, must serve "in order to be eligible for parole once again on his original sentence . . . ." *Post* at 15. He believes that the parolee's parole eligibility date *for the*

_____

[26] Justice Markman acknowledges that "the date of [the defendant's] parole eligibility is determined by MCL 791.234(1) . . . ." *Post* at 2.

*original offense* changes or may change because the parolee has violated his parole.

The flaw in Justice Markman's theory is that *parole eligibility* is a function of statute: MCL 791.234. Unless a new sentence is imposed consecutive to the original sentence, in which case the offender's new parole eligibility date is then governed by MCL 791.234(3), the offender's parole eligibility date does not change. The defendant's parole eligibility remains governed by MCL 791.234(1) and, therefore, the defendant was and is eligible for parole when he has served his original minimum sentence. Absent a new prison sentence that would bring parole eligibility within the ambit of MCL 791.234(3), the offender's parole *eligibility* is unaffected by a finding of a parole violation. To be sure, the Parole Board has the *discretion* to *revoke* parole in that situation,[27] but that does not alter the offender's status as *eligible* for parole. Indeed, the Parole Board is not *required* to revoke parole even if the evidence supports the parole violation allegation by a preponderance of the evidence.[28] We find no statutory support for Justice Markman's underlying conclusion that a parole violation alone may change the

---

[27] "After a prisoner is released on parole, the prisoner's parole is subject to revocation at the discretion of the parole board for cause as provided in this section." MCL 791.240a(1).

[28] "If a preponderance of the evidence supports the allegation that a parole violation occurred, the parole board *may* revoke parole . . . ." MCL 791.240a(10) (emphasis added).

35

parole eligibility date previously calculated under MCL 791.234(1) by making it a

matter of the Parole Board's discretion.[29]

---

[29] Justice Markman quotes various sentences from the DOC's amicus curiae brief in support of the proposition that the Parole Board is statutorily required to make a "remaining portion" determination but has "abandoned its responsibility in this respect . . . ." *Post* at 16-17 n 6.

In its amicus curiae brief, the DOC emphasizes that it lacks sentencing authority and that its discretionary authority lies in determinations of parole *worthiness*. When one reads the entire brief, it is clear that the DOC is stating that the Parole Board "does not exercise its discretion" to make a "remaining portion" determination *because it lacks the authority to do so*. In addition, the DOC's amicus curiae brief repeatedly refers the reader to its brief in *People v Wright*, 474 Mich 1138 (2006). There, the DOC explained:

> After a parolee is returned to prison with a new consecutive prison sentence, the Parole Board does nothing, since the prisoner is not yet *parole eligible* as a matter of law until the new minimum sentence is served. It is meaningless for the Parole Board to attempt to make a prediction as to what their parole decision will be one, two, or more years in the future when the prisoner becomes *parole eligible*. However, unlike the situation of a prisoner returned to prison with a new conviction and consecutive sentence, if a prisoner is merely returned to prison as a parole violator for a 'technical violation' such as testing positive for alcohol while on parole release for an OUIL 3rd offense, the prisoner is still *parole eligible*, but the Parole Board has determined that the prisoner is no longer *parole worthy*. The Parole Board does not sentence the parole violator for a 'technical violation' to a new minimum sentence since the Parole Board does not have such power. Rather, the Board sets a new 'continuation date' at which time they will again review the prisoner for *parole worthiness*. The concept of a 'continuation date' is not reserved for parole violators only. If any prisoner is not granted a parole when they first become parole eligible by serving their minimum sentence, the Parole Board sets a new 'continuation date,' typically 12, 18, or 24 months in the future, when the prisoner will again be reviewed for parole *worthiness*. [Brief of the DOC, n 16 *supra* at 14-15 (emphasis in original).]

"An agency such as the DOC has no inherent authority, and the limitations of its power and authority 'must be measured by the statutory enactments from which it is created.'" *People v Holder*, 483 Mich 168, 175 n 21; ____NW2d ____ (2009) (citation omitted).  The Parole Board has the discretionary authority to grant or deny parole, MCL 791.233; MCL 791.234(1), (3), and (4); MCL 791.235.  Once it has granted a prisoner parole, the Parole Board also has the authority to "discharge[] [the prisoner] upon satisfactory completion of the parole."  MCL 791.234(3).  In addition,

> [i]f a prisoner other than a prisoner subject to disciplinary time has 1 or more consecutive terms to serve in addition to the term he or she is serving, the parole board may terminate the sentence the prisoner is presently serving at any time after the minimum term of the sentence has been served.  [MCL 791.234(5).]

Finally, if the parolee violates the terms of his parole, the Parole Board has the authority to revoke parole.  MCL 791.240a.  None of these statutorily defined functions of the Parole Board includes a *requirement* that the Parole Board make an "affirmative determination of how long the defendant must serve on [his first] sentence."  *Post* at 16.

Instead, Justice Markman locates the "remaining portion" requirement in MCL 734.234(1), as discussed above, MCL 791.241, and MCL 768.7a(2), as interpreted in *Wayne Co Prosecutor*.  MCL 791.241 provides, in full: "When the parole board has determined the matter it shall enter an order rescinding such parole, or reinstating the original order of parole or enter such other order as it

37

may see fit." Justice Markman concludes that this constitutes a statutory requirement that the Parole Board make an affirmative "remaining portion" determination because it provides that "the Board 'shall' enter an order taking some action after determining whether a parole violation has occurred . . . ." *Post* at 31 n 14. MCL 791.241 requires the Parole Board to *enter an order* rescinding parole, reinstating parole, or some other order "as it may see fit" once it has been determined whether the parolee violated his parole. Nothing in that provision requires the Parole Board to make a decision about how much additional time, if any, a parolee is required to spend in prison before being paroled on some predetermined future date. Moreover, when, as here, the parole violation is "conviction for a felony or misdemeanor punishable by imprisonment," the Parole Board does not "determine[] the matter," MCL 791.241, by holding a parole violation hearing because no parole violation hearing is required. MCL 791.240a(3).[30]

Justice Markman locates the "affirmative determination" requirement on which his analysis is based in the following discussion of MCL 768.7a(2) in

---

[30] Justice Markman also states that MCL 791.233e "provides additional guidance" to the Parole Board in making the "remaining portion" determination.

MCL 791.233e(1) requires the Parole Board to establish parole guidelines to "govern the exercise of the parole board's discretion . . . *as to the release of the prisoners on parole* . . . . The purpose of the parole guidelines shall be to assist the parole board in making *release decisions* that enhance the public safety." (Emphasis added.) There is no reference there, or anywhere else in the statutory scheme, to a "remaining portion" determination.

38

*Wayne Co Prosecutor*, *supra* at 584: "[W]hatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve."[31]  As is apparent from the statutes that pertain to the authority of the board (such as MCL 791.333, MCL 791.234, and MCL 791.240a), the Parole Board "requires" the parolee "to serve" by exercising its statutory authority to revoke parole, MCL 791.240a, and therefore delay the possibility of discharge, MCL 791.234(3), and by declining to exercise its discretion under MCL 791.234(5) to terminate the sentence the parolee is presently serving.  The Parole Board may account for previous parole violations in making these decisions.  See MCL 791.233e(2)(d).  We find no statutory requirement that the Parole Board make an affirmative "remaining portion" determination.  Had this Court in *Wayne Co Prosecutor* understood MCL 768.7a(2) to impose a new requirement on the Parole Board, we presumably would have said so.[32]

Thus, in addition to our disagreement with his interpretation of the jail credit statute, MCL 769.11b, we conclude that Justice Markman's approach to jail credit is inconsistent with the statutory scheme pertaining to the authority of the Parole Board and is not required by MCL 768.7a(2) or our decision in *Wayne Co*

---

[31] Chief Justice Kelly shares  a similar interpretation.  See *post* at 7-8.

[32] We also disagree with Justice Markman that a "remaining portion" determination requirement emerges from some combination of MCL 791.234(1), MCL 768.7a(2), and MCL 791.241.  We believe the preceding discussion of these statutes makes it clear that there is no such requirement.

39

*Prosecutor*. Finally, even assuming that Justice Markman is correct that this Court could order the Parole Board to make individualized "remaining portion" determinations without running afoul of *Warda v Flushing City Council*, 472 Mich 326; 696 NW2d 671 (2005),[33] *post* at 17 n 6, we question whether it would be advisable to do so. At the very least, such an order would require a major restructuring of the Parole Board's policies and procedures. In addition, the DOC's current practice of considering a parolee's new sentence to begin running on the date it is imposed for purposes of parole eligibility applies equally to all prisoners. If this Court ordered the Parole Board to make individualized "remaining portion" determinations, the Parole Board would be free to establish variable standards that would generally be unreviewable by the courts under *Warda*.

## VI. CONCLUSION

Under MCL 791.238(2), defendant resumed serving his original maximum sentences when he was arrested in connection with the new criminal offense. Regardless of his eligibility for bond or his ability to furnish it, defendant remained in jail because he was serving those earlier sentences. Accordingly, the

---

[33] Under *Warda*, *supra* at 336-337, if

a statute empowers a governmental agency to undertake a discretionary decision, and provides no limits to guide either the agency's exercise of that discretion or the judiciary's review of that exercise, the decision is not subject to judicial review absent an allegation that the exercise of that discretion was unconstitutional.

jail credit statute, MCL 769.11b, does not apply. The sentencing court lacked authority to grant defendant credit against his new minimum sentence because doing so would be inconsistent with the statutory scheme. Finally, denial of credit against defendant's new minimum sentence did not subject him to multiple punishments for the same offense, and he has failed to show that the denial of credit against his new minimum sentence violated equal protection.

Affirmed.

Maura D. Corrigan
Elizabeth A. Weaver
Robert P. Young, Jr.
Diane M. Hathaway

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                        No. 137301

PATRICK LAWRENCE IDZIAK,

Defendant-Appellant.

_____

KELLY, C.J. (*concurring in part and dissenting in part*).

I agree with the majority that a parolee incarcerated on new criminal charges is not entitled to jail credit under MCL 769.11b. If the parolee is convicted, the court may not award credit against the sentence it imposes for time the parolee spent in jail awaiting trial. But I reach that conclusion for different reasons than the majority finds appropriate.

In this case, I believe that the 98 days defendant served in jail should have been considered time served toward the minimum term calculated under MCL 791.234.[1] The existing application of the consecutive sentencing scheme may also be unconstitutional as applied to similarly situated parolees.

---

[1] MCL 791.234 determines when the Parole Board acquires jurisdiction to parole a prisoner serving consecutive indeterminate sentences.

THE CONSECUTIVE SENTENCING STATUTES

Persons who are convicted of offenses committed while they are on parole are automatically subject to consecutive sentences under MCL 768.7a(2), which provides:

> If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.

MCL 791.234 specifies how consecutive sentences must be calculated.[2]

MCL 791.234(3) states:

> If a prisoner other than a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms, less the good time and disciplinary credits allowed by statute. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served less good time and disciplinary credits, unless the prisoner is paroled and discharged upon satisfactory completion of the parole.

Finally, MCL 791.238(6) states that a parolee is considered to be serving his or her sentence while on parole:

---

[2] All analyses of MCL 791.234(3) in this opinion apply with equal force to MCL 791.234(4), which concerns prisoners subject to disciplinary time. The two subsections are identical with respect to when the parole board has jurisdiction and the calculation of a new maximum term. MCL 791.234(3) merely alters the calculation to account for good time or disciplinary credits, which are not available for prisoners subject to disciplinary time under MCL 791.234(4).

2

A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court and, if he or she is eligible for good time, shall be entitled to good time the same as if confined in a state correctional facility.

Discerning how to correctly give force to each of these statutes is a difficult task. Unlike the majority, I do not agree that existing practices give proper effect to the statutory language. I believe than the key to the correct interpretation is the timing of the Parole Board's calculation of a consecutive sentence under MCL 791.234(3).

*Application of the Sentencing Statutes*

MCL 768.7a(2) provides for consecutive sentences for all paroled offenders who are convicted of and sentenced for a new felony committed while they were on parole for their original offense. Once the parolee is sentenced for the new offense, the Parole Board calculates the date when he or she will again be eligible for parole pursuant to MCL 791.234(3).

Under MCL 791.234(3), a prisoner must serve "the total time of the added minimum terms" before becoming eligible for parole. The parolee's new parole eligibility date is computed by considering first how much time the parolee must serve, then determining how much time the parolee "has served."

MCL 791.234(3) therefore defines when the Parole Board has jurisdiction to parole a prisoner serving consecutive indeterminate sentences. It does so by combining the terms of the old and new sentences into one aggregate term. The

3

minimum and maximum terms of the old and new sentences are added together. The result is a single term with one minimum and one maximum. The new minimum and maximum set the new boundaries of the time a prisoner must serve.

It is only when this aggregate, single term has been determined that the Parole Board can calculate the parolee's new parole eligibility date.[3] Thus, calculating what constitutes "time served" is inevitably a retroactive exercise. The Parole Board does not determine a defendant's new parole eligibility date until after he or she is sentenced for the new offense.

Under the current practice of the Department of Corrections (DOC), the minimum sentence of a paroled defendant who offends again does not begin until the date of sentencing. Consequently, the Parole Board does not acquire jurisdiction over that defendant until he or she has served the equivalent of the minimum term of that new offense. That term is measured from the date of sentencing on the new offense.

However, this practice does not reflect what the statute requires. The statute mandates only that the prisoner serve an amount of time equal to the added minimum terms of incarceration. That time served includes (1) time served in prison on the original offense, (2) time served on parole for the original offense,

---

[3] This conclusion is based on common sense. Until the minimum terms of a parolee's consecutive sentences are combined, the Parole Board cannot know how much minimum time the parolee must serve before again becoming eligible for parole.

according to MCL 791.238(6), and (3) time spent in jail awaiting disposition of the new charges.

The parties do not dispute that the Parole Board lacks authority to alter a defendant's sentence. It cannot add time to the minimum sentence already served.[4] As we have noted:

> [C]onsecutive sentences imposed on persons who, while incarcerated or on escape, commit another crime will commence to run when the total of the *minimum* sentences imposed for prior offenses has been served.[5]

In *Wayne Co Prosecutor*, we also observed that the "Legislature's intent in enacting [MCL 768.7a(2)] was simply to extend the statutory provisions of [MCL 768.7a(1)] to parolees . . . ."[6] The Parole Board has not only the authority but a statutory obligation to use the terms of sentences imposed by courts in order to calculate both (1) the earliest point at which a prisoner may be released on parole and (2) the point at which he or she must be discharged from prison.

I conclude that the plain meaning of "total time" in the clause "when the prisoner has served the total time of the added minimum terms" must apply to all time served. Generally, no remaining portion remains on a defendant's minimum term when he or she is paroled. Therefore, any time served on parole or in jail

---

[4] Normally, a defendant's minimum sentence has run when he or she is paroled.

[5] *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 580; 548 NW2d 900 (1996) (emphasis in original).

[6] *Wayne Co Prosecutor*, *supra* at 581.

awaiting disposition of new charges should be counted as time served toward the aggregate minimum sentence. *Wayne Co Prosecutor* erred to the extent it went beyond that language and concluded that the consecutive sentence would commence immediately upon the parolee's new offense. That conclusion does not take into account the timing of the Parole Board's calculation of a defendant's added minimum terms under MCL 791.234(3).

My interpretation is consistent with this Court's interpretation of MCL 768.7a(2) and truer to its holding in *Wayne Co Prosecutor*. In that case, we also held that

> the "remaining portion" clause of [MCL 768.7a(2)] requires the offender to serve at least the combined minimums of his sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve.[7]

We therefore rejected the prosecutor's argument that MCL 768.7a(2) requires a prisoner to serve his or her entire original maximum sentence before beginning to serve his or her new minimum sentence. Under MCL 791.234(3), the Parole Board lacks jurisdiction over the prisoner for the purposes of parole until he or she reaches the new parole eligibility date. However, after the prisoner is sentenced for the new offense, the Parole Board clearly has the authority to require the prisoner to serve an additional portion of the original maximum sentence. This is due to his or her parole violation. As indicated by the use of the permissive

---

[7] *Wayne Co Prosecutor*, *supra* at 584.

6

language from *Wayne Co Prosecutor*, "may . . . require him to serve," the Parole Board need not add time.

In current practice, however, the Parole Board does not make such a decision. It passively treats time served in prison before sentencing for a new offense, however long that may be, as time served for the defendant's parole violation.[8] But this time served is currently counted only toward the defendant's original maximum sentence.[9] I believe that this policy does not constitute a discretionary decision. Therefore, I believe *Warda v Flushing City Council*[10] is not applicable.

I believe that the Parole Board may exercise its discretion to decide whether a prisoner eligible for parole will serve additional time in prison because of a parole violation. However, I also believe that such an affirmative and

---

[8] The DOC's policy states that "[a] parolee convicted of a felony while on parole who receives a new sentence to be served with the Department shall be found to have violated parole based on that new conviction and sentence. A parole revocation hearing is not required." MDOC Policy Directive 06.06.100, § T, effective February 26, 2007. The policy does not address the issue of how much additional time must be served in prison for the parole violation.

[9] This policy directly contravenes MCL 791.234(3) as well as the statement from *Wayne Co Prosecutor* that consecutive sentences begin running when the total of the minimum sentences imposed for prior offenses has been served. See my previous discussion of *Wayne Co Prosecutor*.

[10] *Warda v Flushing City Council*, 472 Mich 326; 696 NW2d 671 (2005). There, the majority held that discretionary decisions made by legislative and executive agencies are unreviewable by the courts. However, the *Warda* majority also noted that "[w]here decision-making falls outside the scope of such discretion, such decision-making would be fully subject to judicial review." *Id.* at 333 n 3.

7

individualized determination is the only proper mechanism for requiring the prisoner to serve additional time only toward his maximum term. The DOC's current practice also raises troubling questions about the constitutionality of its treatment of similarly situated individuals.[11]

*Criticisms of My Approach*

I disagree with the majority and Justice Markman that my interpretation contravenes consecutive sentencing. When someone has been convicted of multiple offenses and received a consecutive sentence, time he or she serves is not credited to the minimum sentences for more than one conviction. In contrast, under a concurrent sentence, any time served is applied to all prisoners' minimum sentences.

Under my interpretation of MCL 769.11b, consistent with a consecutive sentence, a prisoner's time served would never be applied toward more than one minimum sentence. Time served would not be applied toward the second minimum sentence until the first minimum sentence had been served. Time served might be applied against the *minimum* term of a new sentence and the *maximum* term of the old sentence at the same time. But, under Michigan's indeterminate sentencing scheme, minimums and maximums are often served

---

[11] See the constitutional arguments section later in this opinion.

concurrently, even when consecutive sentencing applies.[12] Indeed, the current application of MCL 791.234(3) applies time served by reoffending parolees to satisfy the minimum sentence of the new offense and the maximum sentence of the old offense simultaneously. This occurs because the maximum sentence for the old offense has not been served when the convict is resentenced. The time left is incorporated into the offender's new combined maximum sentence.

Moreover, I disagree with the majority opinion that my interpretation is undermined by MCL 791.238(6). As discussed previously, the Parole Board has no authority to alter a defendant's sentence. A defendant's early release date is not calculated until after the minimum and maximum terms of both consecutive sentences have been added together. I believe that all the time that a defendant has served should be applied toward that aggregate term, as calculated by the Parole Board pursuant to MCL 791.234(3). I reject the majority's contention that the Legislature intended that time spent on parole should count only toward the sentence imposed by the court before the prisoner was paroled.[13]

---

[12] In *Wayne Co Prosecutor*, this Court rejected the argument that Michigan's consecutive sentencing scheme requires offenders to serve the entire maximum sentence of their original offense before beginning a new minimum sentence. *Wayne Co Prosecutor*, *supra* at 579-584.

[13] The majority's observation that the word "imposed" is written in the past tense does not undercut my conclusion. The timing of the Parole Board's determinations is the focal point. Because time served is calculated *after* a prisoner's minimum terms are added together, the prisoner's time spent on parole is time served on the sentence "imposed"—past tense—by the court.

The majority's conclusions are premised on an erroneous assumption: A prisoner serving an existing prison term while awaiting trial for a new offense cannot be considered to be serving time toward a new sentence that is imposed after the trial. The error in this assumption is illustrated by examining the application of jail credit to the sentences of first-time offenders. While a first-time offender is in jail awaiting trial, he is not serving his sentence. He has not yet been convicted, and there is no sentence to serve. But once convicted, he is considered to have been serving the sentence while in jail awaiting trial.

Similarly, while a parolee is incarcerated awaiting trial for new criminal conduct, he or she cannot be serving his or her new sentence because it does not yet exist; he or she is only serving his or her prior sentence. But once the second sentence has been imposed, MCL 791.234(3) becomes operative. Only at that point can the new aggregate term governing the prisoner's incarceration be computed. The minimum terms of both sentences are added together, as are the maximum terms of both sentences.

At that point, it is relevant to ask, with respect to parole eligibility and maximum discharge dates, how much time the prisoner has served. MCL 791.238(6) indicates that the parolee is considered to have been serving his sentences while on parole. That none of the sentences existed at the time he was

10

deemed to be serving them is not inherently problematic.[14] The same result occurs

with the award of jail credit to a first-time offender. While in jail, a first-time

offender is similarly considered to have been serving a sentence that did not yet

exist.

The "sentence imposed by the court" referenced in MCL 791.238(6) should

not be given the overly restrictive meaning that the majority ascribes to it.[15] This

is made clear by MCL 8.3b, which provides that in construing statutes,

> [e]very word importing the singular number only may extend to and
> embrace the plural number, and every word importing the plural
> number may be applied and limited to the singular number.

---

[14] While vigorously and repeatedly protesting that "the plain language of MCL 791.238(6)" does not allow such a result, the majority provides scant support for why this is so. Indeed, its sole basis for this conclusion is that my interpretation would contravene consecutive sentencing. As explained earlier in this opinion, I disagree that my approach contravenes consecutive sentencing.


[15] The majority advances one additional reason why my opinion is contrary to the plain language of MCL 791.238(6). Apparently, the majority would require that a statute affirmatively state that a prisoner may be credited for time served before the sentencing offense was committed. Otherwise, that result cannot be a feasible interpretation. *Ante* at 29-30 & n 25. I reject the notion that absent statutory language stating "a prisoner may be credited for time served before the sentencing offense was committed," one cannot discern such an interpretation. As noted, an analysis of the applicable statutes in context with one another supports such an interpretation. Moreover, MCL 791.238(6) specifically does provide, without limitation, that prisoners on parole are "serving out the sentence imposed by the court . . . ."

The majority's limitation on MCL 791.238(6) never gives effect to the timing of the Parole Board's calculation of time served. Nor does the majority squarely address that when read together, MCL 791.234 and MCL 791.238(6) require that all time served count as time served toward a prisoner's added minimum terms.

11

Thus, even though MCL 791.238(6) refers to a single sentence, it may properly be considered to reference multiple sentences, including those being served consecutively.

Furthermore, MCL 791.238(6) credits all parolees for time served while on parole, whether they are serving two sentences imposed consecutively, or three or more. Another example illustrates how this occurs. A prisoner is paroled from a single sentence and receives a consecutive sentence for a new felony committed while on parole. The prisoner is paroled again and commits a third felony resulting in a third consecutive sentence. In what sense was the prisoner serving out the "sentence imposed by the court"? Quite literally, the prisoner was not actually serving a single sentence imposed by a court. Rather, the prisoner was serving a combined term of imprisonment computed by the DOC under MCL 791.234(3) after the prisoner's second offense. This combined term is an aggregate term with added minimums and added maximums. That combined term included two sentences imposed by the court as its component parts. Thus, it is not a failure of logic to read MCL 791.238(6) to mean that, while on parole, parolees are serving sentences imposed by the court. They are serving all of them, including the one imposed for the most recent episode of new criminal conduct committed while on parole.

12

I also disagree with the assertion in the majority's and Justice Markman's opinions that my interpretation leads to "illogical" or "anomalous" results.[16] Most of this criticism is that my interpretation could result in a repeat offender being deemed eligible for parole immediately upon being sentenced for a new offense. Clearly, such a situation could occur. But, of course, the Parole Board always has the discretion not to grant parole. Therefore, the situation does not constitute the absurd result of a repeat offender likely being paroled without serving time for a second offense. Certainly, it does not warrant disregarding the statutory language.

I offer this hypothetical example by way of illustration of what MCL 791.234(3) requires: An offender is sentenced to 1 to 10 years in prison. The offender is granted parole after serving the minimum sentence. No time remains on the minimum sentence, and 9 years remain on the maximum sentence. After 2 years on parole, the offender commits an act that gives rise to a new felony charge. The offender is immediately arrested and jailed. At that time, the offender has 7 years remaining to serve on the maximum sentence.

The offender then spends 1 year in jail awaiting trial, conviction, and sentencing on the new offense. Accordingly, on the sentencing date, 6 years remain to be served on the original maximum term.

The offender receives a 7- to 15-year term of imprisonment for the new offense. Under MCL 791.234(3), the DOC calculates the new parole-eligibility

---

[16] *Ante* at 27, 32; *post* at 22 n 9.

13

date by adding the new minimum term (7 years) and the minimum term of his original sentence (1 year). His new minimum term is 8 years. The DOC calculates the new maximum discharge date by adding the new maximum sentence (15 years) to the original maximum sentence (10 years). Thus, the offender's new maximum sentence is 25 years.[17]

The key question is how much time has the offender served toward this newly calculated 8- to 25-year term by the time the DOC calculates it? I conclude that under a plain reading of MCL 791.234(3), the offender has served 4 years of that sentence: 1 in prison on the original offense, 2 on parole, and 1 while incarcerated awaiting trial for the new offense. Therefore, in the hypothetical example, the offender is eligible for parole 4 years after sentencing for the new offense.

THE JAIL CREDIT STATUTE

MCL 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

---

[17] All the parties agree that it is the court that sets the terms of the respective judgments of sentence that the DOC uses to determine the new minimum and maximum terms.

I agree with the majority that this statute does not apply to parolees who offended again and spend time in jail awaiting disposition of the new charges against them. But my rationale is different. Because the time served in jail counts as "time served" on the aggregate minimum term calculated by the DOC, a parolee is not entitled to other credit for such time. If the parolee were to receive credit against the court's sentence for the offense committed while on parole, the parolee would receive double credit for the same time. This Court has consistently rejected this outcome in other contexts.[18]

CONSTITUTIONAL ARGUMENTS

Members of this Court, including myself, have previously observed that the practices at issue appear to arbitrarily treat similarly situated parolees differently, presenting potential violations of those individuals' constitutional rights.[19] As the majority correctly observes, defendant here does not specifically challenge the practices of the DOC but argues that the judicial practice of denying jail credit to parolees is unconstitutional. Because I conclude that MCL 791.234(3) requires time served in jail under these circumstances to count toward a defendant's new minimum sentence, I need not reach defendant's constitutional arguments.

Because a majority of the Court rejects my reading of the statutes, however, I am compelled in dissenting to remark on the possible constitutional violation

---

[18] See, e.g., *People v Patterson*, 392 Mich 83; 219 NW2d 31 (1974).

[19] *People v Wright*, 474 Mich 1138 (2006) (Markman, J., dissenting); *People v Conway*, 474 Mich 1140 (2006) (Kelly, J., dissenting).

15

presented by the current scheme. The current treatment of parolees' time served is, in my view, so irrational and arbitrary as to risk failing constitutional muster. Parolees who commit identical crimes and who receive identical sentences may serve vastly different sentences solely on the basis of the date of sentencing. The date sentencing occurs is influenced by factors outside the parolee's control, including docket congestion, a judge's illness or vacation time, or the prosecutor's speed in pursuing the case. The current system allows these factors to determine how much time served is credited against a convict's sentences, and it results in disparate treatment.

Equally troubling are circumstances where there is a disparity in sentencing dates because a parolee exercises his or her constitutional right to a trial on his or her second offense. The majority is correct that "there is no *per se* rule against encouraging guilty pleas . . . ."[20] However, I submit that the current practice of applying time served may be unconstitutional because the disparate treatment and resulting promotion of guilty pleas is "'needless.'"[21]

Finally, I take note that courts have expressed objections to the present practice for almost 20 years,[22] yet neither the Legislature nor the DOC has

---

[20] *Ante* at 24, quoting *Corbitt v New Jersey*, 439 US 212, 218-219; 99 S Ct 492; 58 L Ed 2d 466 (1978).

[21] *Corbitt*, *supra* at 219 n 9.

[22] See, e.g., *People v Watts*, 186 Mich App 686, 691 n 4; 464 NW2d 715 (1991) ("[T]his inequitable situation could be resolved in a number of ways . . . . For that matter, a strict reading of MCL 791.234(2); MSA 28.2304(2) could be

addressed it.  I would not allow their failure to grasp the nettle to prevent us from finally doing so today.

CONCLUSION

I agree with the majority that MCL 769.11b does not apply to parolees held in prison on new criminal charges.  However, I reach this conclusion because time served in jail awaiting disposition of new charges should be considered time served toward a defendant's aggregate minimum term under MCL 791.234(3). Finally, I am concerned that the existing application of the statutory scheme to prisoners who offend again while on parole is unconstitutional.

Therefore, I would direct the Parole Board to recalculate defendant's parole eligibility date using the analysis herein.

Marilyn Kelly
Michael F. Cavanagh

---

applied, the two minimum terms added together, and the parole date calculated accordingly. . . .  [W]hile we urge the Legislature to address this issue, we decline to do so ourselves.").  Justice Weaver was on the Court of Appeals panel that decided *Watts*.

17

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                       No. 137301

PATRICK LAWRENCE IDZIAK,

      Defendant-Appellant.

_____

MARKMAN, J. (*dissenting*).

I respectfully disagree with the majority's conclusion that MCL 769.11b, the "jail credit" statute, is inapplicable to a defendant who spends time in jail awaiting sentencing for a new crime committed while he is on parole. In accordance with MCL 769.11b, "any person" is entitled to jail credit when he is "denied or *unable* to furnish bond for the offense of which he is convicted . . . ." (Emphasis added.) Because a defendant who commits a new crime while on parole is unquestionably "unable" to furnish bond for the new offense for which he is convicted, he is entitled to jail credit. Contrary to the majority's view, it is of no consequence whether a defendant was unable to furnish bond "because of" a parole detainer, as defendant here was, as long as he was unable to post bond "for the offense of which he was convicted . . . ." Thus, defendant should have received 98 days of jail credit toward the sentence for his new offense for the time he spent incarcerated while awaiting sentencing on his new offense. However, the

majority not only disallows the award of jail credit under MCL 769.11b, but it does so without fully addressing the very significant problem of arbitrariness that arises under its interpretation. That is, the majority's interpretation leads to a situation in which identically situated defendants may be treated in a widely disparate fashion on the basis of entirely serendipitous factors, such as an assistant prosecutor's diligence or a judge's vacation schedule. Because I believe the majority has erred in its interpretation of the relevant statutes, I dissent.

## I. ANALYSIS

The ultimate issue in this case is whether, under MCL 769.11b, defendant is entitled to jail credit for the time he was incarcerated awaiting sentencing for a crime he committed while on parole. Because a proper resolution of this issue involves the interrelation of several different statutes, I will begin this analysis by providing an overview of how the parole process operates and will then discuss how the relevant statutes relate to one another by applying these provisions to a hypothetical defendant.

## A. Parolees and Time Served

As a general matter, when a defendant is convicted of a felony, he is sentenced to an indeterminate term of imprisonment and is incarcerated, thereby being placed in the custody of the Michigan Department of Corrections (DOC). He then begins serving his sentence, and the date of his parole eligibility is determined by MCL 791.234(1), which provides:

> Except as provided in [MCL 791.234a], a prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years other than a prisoner subject to disciplinary time is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted, less good time and disciplinary credits, if applicable.

Thus, once the defendant serves an amount of time "equal to the minimum sentence," he is eligible for parole and may be paroled by the Parole Board (the Board). Assuming the Board grants the defendant parole, he then becomes a parolee and, according to MCL 791.238(6), continues to serve out the unexpired portion of his sentence while on parole. MCL 791.238(6) provides: "A parole shall be construed as a permit to the prisoner to leave the prison, and not as a release. While at large, the parole prisoner shall be considered to be serving out the sentence imposed by the court."

To illustrate how these statutes operate together, assume a defendant has been convicted of a crime and is sentenced to a term of 5 to 10 years' imprisonment. After serving the minimum 5-year term, the defendant becomes eligible for parole, and the Board decides to grant the defendant parole, thereby making him a parolee. The parolee spends 1 year on parole and then commits a new crime, which means that he has now served a total of 6 years on his original 5- to 10-year sentence. However, once he is incarcerated for allegedly committing a new offense, the "unexpired portion" of the initial sentence, along with how the

3

parolee's time spent in jail pending a determination of whether he violated his parole is allocated, is determined, in part, by MCL 791.238, which states:

> (1) Each prisoner on parole shall remain in the legal custody and under the control of the department. . . . Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.

> (2) A prisoner violating the provisions of his or her parole and for whose return a warrant has been issued by the deputy director of the bureau of field services is treated as an escaped prisoner and is liable, when arrested, to serve out the unexpired portion of his or her maximum imprisonment. The time from the date of the declared violation to the date of the prisoner's availability for return to an institution shall not be counted as time served.

Notably, subsection 2 only states that a parolee, after being reincarcerated, is "liable" to serve out the "unexpired portion" of his first offense, not that he automatically resumes serving that term. Being "liable" to serve out the unexpired portion of the original sentence is not, as assumed by the majority, the equivalent of automatically continuing to serve that sentence, as a parolee does while he remains on parole.[1] See MCL 791.238(6). This conclusion is supported by the

---

[1] The majority concludes that a defendant who is arrested for committing a new crime while on parole automatically continues serving his original sentence using the following analysis:

> Because a paroled prisoner is considered to be serving his sentence as long as he remains in compliance with the terms of his parole, MCL 791.238(6), *except* "from the date of the declared violation to the date of the prisoner's availability for return to an institution," MCL 791.238(2), the second part of MCL 791.238(2) establishes that the time *after* "the date of the prisoner's availability for return to an institution" *is* to be counted as time served against the parolee's original sentence. [*Ante* at 16.]

4

distinctive language of MCL 791.238(6) and MCL 791.238(2), each of which establish, in a different context, when a defendant is and is not considered to be serving out his original sentence.

In MCL 791.238(6), the Legislature specifically required that a prisoner "shall" be considered serving out the unexpired portion of his initial sentence while on parole. MCL 791.238(2), on the other hand, only states that a parolee is "liable" to serve out the "unexpired portion" of his first sentence, but does not require that he automatically resume serving that unexpired portion. MCL 791.238(2) also clarifies, using mandatory language ("shall not"), when a parolee is *not* to receive credit toward his original sentence. If the Legislature had intended that a parolee who is arrested for a new crime while on parole automatically continues serving time toward the sentence for his first offense, it could have used the same definite language ("shall") as it did in MCL 791.238(6). However, because MCL 791.238(2) instead uses permissive language ("is liable . . . to serve"), rather than the same mandatory language used in MCL 791.238(6), it becomes necessary to examine whether a defendant is actually

---

Although the majority's assumption that a prisoner resumes serving time on his original sentence as soon as he becomes available for return to the institution is not unreasonable when MCL 791.238(2) is read independently of other relevant statutes, the majority's interpretation of MCL 791.238(2), in conjunction with the jail credit statute and other relevant statutory provisions, strongly suggests that this analysis is incorrect. More specifically, as will be discussed in part I(C) *infra*, a defendant who violates parole by committing a new crime cannot serve his new sentence concurrently with his original sentence. See MCL 768.7a(2). Thus, when a prisoner receives jail credit toward the sentence for his new offense, he *cannot* also be serving time toward the sentence for his original offense.

5

serving time toward his original sentence when he is arrested for a new crime while on parole. The answer to this question depends on whether the defendant's parole violation ultimately leads to a subsequent conviction of another crime for which jail credit can apply.

If a defendant is arrested because of a parole violation that does not constitute a new criminal offense, and the Parole Board requires the defendant to serve an additional amount of the unexpired portion of his first sentence, then there is no question that any time the parolee spends reincarcerated must be credited as time served toward his original sentence because there is no other sentence to which that time can be credited. However, if a defendant is arrested for a new crime while on parole, MCL 768.7a(2), as discussed in part I(C) *infra*, prohibits the defendant from serving his original and new sentence concurrently, which means that the only way to know if the defendant is serving time toward his original sentence is to determine if the parolee will receive jail credit for his new sentence once he is convicted. If he does receive jail credit, then despite the fact that he remains liable to serve out the unexpired portion of his initial sentence, he will not have actually been doing so during the time he was reincarcerated. Thus, in order to determine whether a defendant who is arrested for committing a new crime will be entitled to credit for time served on his original sentence for which he remains liable, it becomes necessary to determine whether a defendant in this situation receives jail credit toward his new sentence.

6

B. Jail Credit

The jail credit statute, MCL 769.11b, states:

> Whenever any person is hereafter convicted of any crime within the state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, . . . [the court] shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

MCL 769.11b applies to "any person," not just non-parolees who spend time in jail awaiting trial. Additionally, the jail credit statute applies to a variety of situations by requiring that "any" defendant "shall" be awarded jail credit when he is incarcerated awaiting sentencing "because of being denied or unable to furnish bond for the offense of which he is convicted . . . ." The statute is silent with respect to the reason that a defendant is being held, and only requires that he spend time in jail "*because of* being denied or unable to post bond *for* the offense of which he is convicted," which means that a defendant is entitled to jail credit on his new sentence as long as he cannot post bond for the new offense, regardless of the reason. However, the majority, by relying on this Court's decision in *People v Prieskorn*, 424 Mich 327; 381 NW2d 646 (1986), which interpreted the jail credit statute in a similar context, construes MCL 769.11b as requiring that a defendant be denied or unable to post bond *because of* the offense for which he is convicted in order to be eligible for jail credit.[2] *Prieskorn* held:

---

[2] The majority states:

7

We believe the sentence credit statute neither requires nor permits sentence credit in cases, such as the one before us, where a defendant is released on bond following entry of charges arising from one offense and, pending disposition of those charges, is subsequently incarcerated as a result of charges arising out of an unrelated offense or circumstance and then seeks credit in the former case for that later period of confinement.

\* \* \*

We agree that the primary purpose of the sentence credit statute is to "equalize as far as possible the status of the indigent and less financially well-circumstanced accused with the status of the accused who can afford to furnish bail."

\* \* \*

Had the Legislature intended that convicted defendants be given sentence credit for all time served prior to sentencing day, regardless of the purpose for which the presentence confinement was served, it would not have conditioned and limited entitlement to credit to time served "for the offense of which [the defendant] is convicted." [*Id.* at 340-341 (citation omitted).]

In other words, the majority agrees with *Prieskorn*'s reasoning, which

subtly alters the statute by requiring that a defendant must be denied or unable to

---

[W]e hold that the jail credit statute does not apply to a parolee who is convicted and sentenced to a new term of imprisonment for a felony committed while on parole because, once arrested in connection with the new felony, the parolee continues to serve out any unexpired portion of his earlier sentence unless and until discharged by the Parole Board. For that reason, he remains incarcerated regardless of whether he would otherwise be eligible for bond before conviction on the new offense. He is incarcerated not "because of being denied or unable to furnish bond" for the new offense, *but for an independent reason.* [*Ante* at 12-14 (emphasis added).]

Again, however, the statute says nothing about the "reason" that a defendant is unable to post bond or has his bond denied; rather, it applies as long as he is actually denied or unable to furnish bond. It is simply irrelevant under MCL 769.11b that a defendant is unable to post bond because of a parole detainer.

8

post bond for a reason attributable to the new offense. *Prieskorn*'s analysis is flawed for two reasons. First, *Prieskorn*'s initial premise, i.e., that the jail credit statute was intended to equalize the existing disparate treatment between indigent and non-indigent defendants, is incorrect. MCL 769.11b simply states that "any person" who is "denied or unable to furnish bond for the offense of which he is convicted" is entitled to jail credit on the sentence for the new offense. The statute does not state that its purpose is to remedy differing treatment of indigent and non-indigent defendants. Indeed, the requirement of MCL 769.11b that any person be awarded jail credit if the person is "*denied* or unable to furnish bond" conclusively rebuts *Prieskorn*'s suggested purpose. That is, although a defendant may be unable to furnish bond because of indigency, he is never denied bond for that reason. Thus, the majority's resolution of whether MCL 769.11b applies to defendant in this case cannot rely on *Prieskorn*'s stated purpose.

Second, *Prieskorn* quoted the jail credit statute out of context by stating that the Legislature "conditioned and limited entitlement to credit to time served 'for the offense of which [the defendant] is convicted.'" *Id*. at 341. A full reading of MCL 769.11b reveals that no such condition or limitation exists. MCL 769.11b merely requires that jail credit be awarded if a defendant is "unable to furnish bond *for* the offense of which he is convicted . . . ." Requiring that a defendant be unable to post bond "for" an offense is significantly different from stating that a defendant can only receive credit based on "time served *for* the offense." In essence, both *Prieskorn* and the majority rewrite the phrase "denied or unable to

9

furnish bond for the offense of which he is convicted" to say "unable or denied bond *because of* the offense for which he was convicted." This is not an interpretation consistent with the actual statute, and I therefore reject it.

MCL 769.11b only requires that, if a defendant is incarcerated awaiting trial and is "denied or unable to furnish bond for the offense of which he is convicted," then he "shall" be awarded jail credit. The statute does not place an additional qualification or restriction on a defendant's right to receive jail credit by stating that the denial or inability to furnish bond must be because of the new crime. As a result, in a situation in which a defendant is arrested for a new crime while on parole, the defendant will be "unable to furnish bond for the offense of which he is convicted" *because of* a parole detainer that is placed on him by the DOC.[3] Further, if a defendant requests bond, it will be "denied" by the trial court for the same reason, in which case he will then be "unable" to post bond due to the denial. Thus, when a defendant is arrested for a new crime while on parole, *and is ultimately convicted*, as was defendant in this case, he is entitled to jail credit.

If, however, a parolee is not actually convicted of the newly charged offense, then he obviously cannot be awarded jail credit because there is no new "offense of which he is convicted." In that situation, the Parole Board must then make a new determination regarding how much of the "unexpired portion" of the

---

[3] A parole detainer is levied on defendants who are arrested while on parole. The detainer prevents a defendant from being released from confinement until the Parole Board makes its determination of how much time he must serve on the "unexpired portion" of his original offense. See MCL 791.238(1) and (2).

10

defendant's original sentence must be served before the defendant can once again be paroled. See MCL 791.233; MCL 791.233e; MCL 791.234(11); MCL 791.238(2). If the Board determines that the defendant does have to serve an unexpired portion of his initial sentence, the defendant will then be awarded credit for time served on his original sentence. It is only in this scenario in which a defendant who is "liable" to serve the "unexpired portion" of his initial sentence under MCL 791.238(2) that the defendant must receive credit for time served toward his original sentence. Once the defendant serves that additional portion of his original sentence, he can be paroled again and, upon successful completion, have his sentence discharged. MCL 791.234(3) and (4).

Returning to the scenario in which the defendant has committed a new crime while on parole, assume that the defendant spends exactly 1 year in jail between the time of his arrest and sentencing. During that time, the defendant is unable to post bond because of a parole detainer. Similarly, if the defendant does request bond, it will be denied by the trial court for the same reason. After being convicted of the new crime, the defendant is sentenced to a new 5- to 10-year term of imprisonment. The question then becomes whether the 1-year period that the defendant spent in jail is credited toward the original or new sentence. Recall that MCL 791.238(2) renders the reincarcerated defendant "liable" to serve out the "unexpired portion" of his original sentence. Additionally, the Parole Board does not make its determination of how much, if any, additional time the defendant must serve on his original sentence until he is convicted or acquitted of the new

11

crime.[4]  Thus, the determination whether to allocate the time a defendant spent in

jail as time served on his original sentence or as jail credit toward his new

[4] When a defendant violates his parole by engaging in conduct other than committing a new criminal offense, the Parole Board is required to hold a series of hearings under MCL 791.239a ("probable cause" hearing) and MCL 791.240a ("parole revocation" hearing).  However, when a defendant violates his parole by committing a felony or misdemeanor punishable by imprisonment, MCL 791.240a implicitly allows a formal trial, or acceptance of a plea agreement, to serve as a substitute.  MCL 791.240a(3) states:

> Within 45 days after a paroled prisoner has been returned or is available for return to a state correctional facility under accusation of a parole violation *other than conviction for a felony or misdemeanor punishable by imprisonment under the laws of this state*, the United States, or any other state or territory of the United States, the prisoner is entitled to a fact-finding hearing on the charges before 1 member of the parole board or an attorney hearings officer designated by the chairperson of the parole board. [Emphasis added.]

In light of this provision, the DOC enacted guidelines.  The most recent version provides, in pertinent part:

> M. A parolee who is charged with violating a condition of parole is entitled to a preliminary parole revocation hearing conducted pursuant to Administrative Rule 791.7740 through 791.7750 to determine if there is probable cause to believe that s/he violated parole <u>except</u> under the following circumstances:
>
> 1. The parolee has been bound over to the Circuit Court on a criminal charge for which s/he also is charged with parole violation. In such cases, probable cause for that parole violation charge is established based on the court's action. . . .
>
> 2. The parolee has been convicted of a criminal charge for which s/he also is charged with parole violation.  This includes a conviction by trial or by guilty or nolo contendre [sic] (i.e., no contest) plea.  In such cases, probable cause for that parole violation charge is established based on the conviction.

12

sentence can only be made at the time of sentencing for the new crime, or shortly before, because the trial court may only award jail credit at sentencing and not at any time thereafter. Here, the hypothetical defendant was sentenced to a new term of imprisonment on the basis of his new criminal offense and was unable to furnish bond for this new offense while he was awaiting trial. Therefore, the parole credit statute applies, and the defendant is awarded 1 year of jail credit toward his new offense. However, awarding jail credit creates a tension between MCL 769.11b and the consecutive sentencing statute, MCL 768.7a(2), which requires that a defendant serve the "remaining portion" of his original sentence *before* beginning his new sentence, as described below.

### C. Consecutive Sentencing and Parole Eligibility

After awarding jail credit to a defendant who was incarcerated for committing a new offense while on parole, it becomes necessary to examine MCL 768.7a(2), which establishes a consecutive sentencing requirement as follows:

* * *

> T. A parolee convicted of a felony while on parole who receives a new sentence to be served with the Department shall be found to have violated parole based on that new conviction and sentence. A parole violation hearing is not required. [DOC Policy Directive No. 06.06.100, Parole Violation Process (February 26, 2007) (emphasis in original).]

Thus, because the Board does not determine whether parole will be revoked until a defendant has been convicted, or has accepted a plea agreement, for a new crime, the Board necessarily does not compute how much time the defendant will be required to serve on his unexpired original sentence until that time as well.

13

If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.

The pivotal component of this provision is that a defendant's "term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense." At first glance, awarding jail credit for a defendant's second sentence before he has completed the remaining portion of his first sentence appears inconsistent with the consecutive sentencing scheme established by MCL 768.7a(2). Yet, upon a closer evaluation of how the "remaining portion" phrase in MCL 768.7a(2) relates to MCL 769.11b, this potential conflict is alleviated.

In *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 584; 548 NW2d 900 (1996), this Court interpreted MCL 768.7a(2) and stated:

We conclude that the "remaining portion" clause of [MCL 768.7a(2)] requires the offender to serve at least the combined minimums of his sentences, plus whatever portion, between the minimum and the maximum, of the earlier sentence that the Parole Board may, because the parolee violated the terms of parole, require him to serve.

As an initial matter, it is important to distinguish the phrase "unexpired portion," as used in MCL 791.238(2), from "remaining portion," as used in MCL 768.7a(2). The unexpired portion of a sentence is the time that remains on a defendant's entire indeterminate sentence and that can be discharged after the defendant

14

successfully completes parole.[5]  The remaining portion of a defendant's original sentence, on the other hand, represents the time that a defendant who violates his parole would otherwise have to serve in order to be eligible for parole once again on his original sentence if he had not been sentenced for a new consecutive sentence, which is why *Wayne Co Prosecutor* described the "remaining portion" as the period of time that the Parole Board "may, because the parolee violated the terms of parole, require him to serve."  Thus, when the Board determines the remaining portion of a defendant's original sentence, it is essentially undertaking a discretionary decision about when the defendant would have been eligible for parole on his original sentence given the violation he committed while on parole.

---

[5] It should also be noted that the "remaining portion" of the original sentence is distinct from the concept of "discharge," see MCL 791.234(3) and (4), and the concept of "termination," see MCL 791.234(5).  A "discharge" is only secured after a parolee successfully completes his parole.  MCL 791.242; MCL 791.234(3) and (4).  In the case of a defendant who has a single sentence, he can be paroled, successfully complete that parole, and then be discharged.  In the case of a defendant who was on parole for an initial offense and violated his parole by committing a new crime, the defendant will be required to serve the remaining portion of his sentence, be paroled, successfully complete parole, and then be discharged.

The Parole Board's power to "terminate" a sentence is established by MCL 791.234(5) and is applicable as follows:

> If a prisoner other than a prisoner subject to disciplinary time has 1 or more consecutive terms remaining to serve in addition to the term he or she is serving, the parole board may terminate the sentence the prisoner is presently serving at any time after the minimum term of the sentence has been served.

Thus, serving the remaining portion of the original sentence does not relieve the defendant of his liability to serve the entire maximum term of that sentence because the original sentence is neither discharged nor terminated.

In other words, MCL 768.7a(2) establishes a sensible requirement that a defendant who violates his parole should first have to serve out whatever "remaining portion" he would have to serve on the "unexpired portion" of his original sentence before the new minimum term on the second offense can begin to run. Such a requirement ensures that a defendant will serve at least all the minimum time for each individual consecutive sentence that was imposed.

Therefore, before a defendant who is unsuccessful in completing his parole because he committed a subsequent crime can begin serving his second sentence, he must first serve out the remaining portion of his first sentence, which, as noted by *Wayne Co Prosecutor*, must be established by the Board's affirmative determination of how long the defendant must serve on that sentence.[6] *Wayne Co*

_____

[6] That the Parole Board is, according to both *Wayne Co Prosecutor* and MCL 768.7a(2), required to make a discretionary determination concerning the remaining portion of the defendant's original sentence is of particular significance in this case. In order for it to render this determination, MCL 791.233e(1) requires that the DOC establish guidelines "that shall govern the exercise of the parole board's discretion . . . as to the release of prisoners on parole under this act," which the Board here has done. MCL 791.233e(2) then provides additional guidance by describing the types of factors that are relevant to making parole decisions, e.g., the "offense for which the prisoner is incarcerated," the "prisoner's institutional conduct," "the prisoner's prior criminal record," and so forth. These factors must be evaluated by the Board in determining whether the defendant must serve any remaining portion on his initial sentence.

However, in practice, the Board seems to have abandoned its responsibility in this respect by allowing the remaining portion to be established solely by how long it takes the defendant to proceed to trial, or accept a plea agreement, on the new offense. Indeed, in its amicus curiae brief, the DOC repeatedly acknowledged that it does not exercise any discretion in this regard by stating that "as a matter of policy, the Department does not impose any additional sanction on

16

*Prosecutor*, 451 Mich at 582 (observing that the Board must make such a determination, given the Court's "conclusion that the Legislature did not intend [MCL 768.7a(2)] to repeal all discretion held by the Parole Board"). Further, because, the defendant cannot begin serving his second sentence until he has completed the remaining portion of his original sentence, awarding jail credit in addition to allocating the time served to the original sentence would allow for double-counting of the time served, which would result in a concurrent sentence, in violation of MCL 768.7a(2). Thus, a defendant who violates his parole by

a defendant who violates a parole and is given a new prison sentence"; "the Department does not exercise its discretion and tack on another period of time on top of the new established minimum date before an inmate becomes parole eligible"; and "as a matter of policy, the Department merely recalculates the sentence under the statutes for the defendant by adding the remaining portions of the minimum (if any) and the maximum from the original sentence with the minimum and maximum of the new conviction." Thus, the Board currently does not, as required by the statute, the DOC guidelines, and *Wayne Co Prosecutor*, make any affirmative determination using the relevant considerations regarding what amount of time a defendant must serve on the remaining portion of his first sentence. It is this failure that is currently causing identically-situated defendants to be treated differently on the basis of entirely arbitrary factors, as discussed in part II. That is, identically-situated defendants are being required to serve widely disparate remaining portions of their original sentences on the basis of the serendipitousness of how long it takes them to proceed to sentencing, regardless of whether that time has any relation to the severity of the original offense or the new crime that constitutes the parole violation.

Because the Board concedes that it is not undertaking any decision in this regard, this Court should, at a minimum, order that it do so. By issuing such an order, this Court would not run afoul of our holding in *Warda v Flushing City Council*, 472 Mich 326, 333 n 3; 696 NW2d 671 (2005), which "precludes the judiciary from reviewing the discretionary decision-making of legislative and executive agencies." (Emphasis deleted.) Issuing an order of this sort would simply require the Parole Board to *undertake* the very type of discretionary decision the law requires.

committing a new crime can only receive credit toward one sentence, and because the jail credit statute requires that credit be given toward the new sentence, a defendant cannot also have the time served allocated to his original sentence in this situation.

Of particular importance to this analysis, and because jail credit must be *awarded* as a component of the second offense, which cannot begin to run until the remaining portion of the first sentence is completed, the awarded jail credit cannot actually be *applied* until the second sentence is commenced. By not immediately applying such credit, the new sentence will be suspended until the defendant serves the remaining portion of his original sentence. Once the time remaining on that sentence has been completed, the new sentence begins and the previously awarded jail credit is then applied. Thus, by requiring the defendant to serve the entire remaining portion of his original offense before jail credit is applied to his new sentence, the consecutive sentencing regime in MCL 768.7a(2) is given full effect.

Continuing with the earlier hypothetical example, recall that the defendant has served 6 years of his original sentence and, while on parole, is subsequently arrested for committing a new crime. Assume that the defendant now spends exactly 1 year in jail before being sentenced to another term of 5 to 10 years for his new offense. Pursuant to MCL 769.11b, that 1 year is awarded as jail credit once the defendant has been sentenced for the new offense and will ultimately be applied toward the second sentence, which leaves the total amount of time already

18

served on his first sentence at 6 years. After the conviction, the Board is then required to make an affirmative determination as to whether the defendant is required to serve any remaining portion on his original sentence, which I will presume for purposes of this example is an additional 2 years. Therefore, the defendant must now serve another 2 years on his first sentence *after he has been sentenced* for the new offense, and none of the time spent between arrest and sentencing will be credited toward his original sentence. After the defendant serves the additional 2 years on his original sentence, he will have served a total of 8 years on the first sentence (5 years in prison + 1 year on parole + 2 years in prison after his new conviction). It is at this point that the defendant will be considered to have served the remaining portion of his original sentence and can begin serving his new sentence. Upon beginning his new sentence, the defendant's jail credit is applied. Thus, once the second sentence begins, the defendant will be considered to have served 1 year toward the new 5- to 10-year sentence.

At this point, it becomes necessary to determine the defendant's new parole-eligibility date. For calculating such a date when there is a newly imposed consecutive sentence, MCL 791.234(3)[7] provides:

---

[7] Although I refer to MCL 791.234(3) throughout this opinion, this analysis is equally applicable to MCL 791.234(4), which is nearly identical to MCL 791.234(3). The only distinction between these two provisions is that MCL 791.234(4) applies to prisoners who are "subject to disciplinary time," whereas

If a prisoner other than a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms . . . .[8] The maximum terms of the sentences shall be added to

MCL 791.234(3) does not. For purposes of resolving the issue currently before this Court, this distinction is not relevant.

[8] To avoid any confusion, it must be noted that although "the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms," MCL 791.234(3), this does not alter the Parole Board's responsibility to make a determination of the remaining portion of the defendant's sentence under MCL 768.7a(2) after conviction of the new offense. This is so because, although the "remaining portion" decision *does* affect the date for which the defendant is eligible for parole, it *does not* affect the decision regarding whether he is actually paroled once he becomes eligible. Put differently, the Board only has jurisdiction to parole a defendant after his total minimum terms have been served, but the Board retains jurisdiction over the defendant for purposes of determining factors that affect his parole eligibility. Further, if the Board could not make any decisions that affected the defendant's parole-eligibility date, then it could not make any determinations regarding a defendant's "good time" in prison that would make the parolee eligible for early release in those cases in which a defendant is eligible to receive credit for "good time." See, generally, MCL 791.234.

Moreover, MCL 791.234(1) specifically states that

a prisoner sentenced to an indeterminate sentence and confined in a state correctional facility with a minimum in terms of years . . . *is subject to the jurisdiction of the parole board* when the prisoner has served a period of time equal to the minimum sentence imposed by the court for the crime of which he or she was convicted . . . . [Emphasis added.]

This language is distinct from that used in MCL 791.234(3), stating that the Board "has jurisdiction over the prisoner *for purposes of* parole . . . ." (Emphasis added.) Thus, MCL 791.234(1) allows the Board to obtain jurisdiction over the defendant for purposes of his original sentence after he has served his minimum term for that offense. It does not purport to divest the Board of that jurisdiction once the defendant has been convicted of a new crime for which MCL 791.234(3) then applies. Once MCL 791.234(3) applies, the Board is only prohibited from exercising jurisdiction in order to actually parole the defendant until he has served

compute the new maximum term under this subsection, and discharge shall be issued only after the total of the maximum sentences has been served . . . unless the prisoner is paroled and discharged upon satisfactory completion of the parole.

As is clear, a defendant who is subject to consecutive terms is now liable for a "new maximum term," which is simply calculated by adding the old and new maximums. However, the language used to describe the amount of time that a defendant must spend on his minimum terms is notably different from that used to determine the new maximum term. More specifically, MCL 791.234(3) provides that the defendant must serve the "total" time of the "added minimum terms," not that a new minimum term is created. This difference is important because, when the statute is read in conjunction with the consecutive sentencing statute, MCL 768.7a(2), the defendant is not required to serve a new minimum term, but has to serve the total time of the combined minimum terms. Significantly, the minimum term for the new offense cannot be served until the new sentence begins to run,[9]

---

the combined minimum terms of the original and new sentences. In sum, although the Board cannot parole a defendant who is serving consecutive sentences until he has served the total time of the added minimum terms, the Board does retain jurisdiction over the defendant for the original offense, which allows it to make the "remaining portion" determination required by MCL 768.7a(2).

[9] It is this consideration that leads me to reject the thoughtful interpretation of MCL 769.11b, MCL 768.7a(2), and MCL 791.234(3), offered by the Chief Justice, because, under her interpretation, a defendant would be allowed to count his time served on the first offense toward satisfying the time he must serve on his second offense. In that case, a defendant would actually be serving his original and new sentences concurrently rather than consecutively; by doing this, the Chief Justice's interpretation renders the requirement of MCL 768.7a(2) that "the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous

21

which means jail credit towards the second sentence's minimum term will only be applied after (a) the Parole Board makes its determination about the remaining portion of the first sentence; and (b) the defendant serves the remaining portion of his first sentence.[10] Once the defendant serves this "remaining portion," and then serves an amount of time equal to the minimum term on the second sentence, which includes any jail credit, the defendant will have served the total time of the added minimums. At that point, he becomes eligible for parole.

In the hypothetical, the defendant's new "maximum term" is 20 years (10 years for the original maximum + 10 years for the new maximum). The total time of his "added minimum" terms is 10 years (5 years for the original minimum + 5 years for the new minimum). The defendant has now served a total time of 9 years on his new maximum (5 years on his original minimum + 1 year on parole + 2 years of the remaining portion of his original sentence + 1 year of jail credit toward his new sentence) and a total of 6 years toward the total of his added minimum terms (5 years on his first minimum term + 1 year jail credit). Thus, the

offense" effectively nugatory. Additionally, this interpretation would allow defendants in some instances to become eligible for parole immediately upon being convicted of a new offense, which leads to what I view as an illogical and anomalous result.

[10] As stated earlier, a defendant who serves the remaining portion of his original sentence has not been discharged, MCL 791.234(3) and (4), nor has that sentence been terminated. MCL 791.234(5). Indeed, if the term "remaining portion" found in MCL 768.7a(2) were interpreted in this manner, it would render nugatory MCL 791.234(3), which requires the new and old maximums and minimums to be added together, because there would be no old maximum and minimum terms to use in this calculation.

defendant would be eligible for parole 4 years from the date that his new sentence begins to run (10 years total minimums – 6 years served on the total minimums).

## D. Application

In this case, defendant was on parole for a previous offense when he committed two new crimes, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b. He was sentenced to a new term of 12 to 50 years' imprisonment for the armed robbery conviction and received a mandatory determinate 2-year sentence for the conviction of possession of a firearm during the commission of a felony. Defendant spent 98 days in jail between the date of his arrest and the date of sentencing and was not awarded jail credit.

Applying the analysis described earlier, defendant should have been awarded 98 days of jail credit because he was "denied or *unable* to furnish bond for the offense of which he [was] convicted." MCL 769.11b (emphasis added). The Parole Board was then required to make an affirmative determination of how much time he was required to serve on the remaining portion of his first sentence. Instead of doing so, the Board automatically, and indeed arbitrarily, determined that the remaining portion was the 98 days that defendant spent incarcerated. Because, in my view, defendant was entitled to jail credit, I would order the Board to render a determination of the remaining portion of defendant's original sentence. In order to correct the errors involved in this matter, the time defendant has already served on his new sentence in excess of the 98 days of jail credit must

23

be first allocated as time served on the remaining portion of his original sentence rather than his new sentence. Any time left over will then count toward defendant's new sentence. If there is still time to be served on the remaining portion of his original sentence, however, the sentence for the new offense should be suspended until defendant has completed the remaining portion of his original sentence.

## II. ARBITRARINESS

In contrast to the interpretation of the relevant statutes set forth in this opinion, the majority concludes that the jail credit statute, MCL 769.11b, has no application to defendants who are incarcerated because of a parole violation. As a result, under the majority's interpretation, identically situated parolees are, and will continue to be, treated differently for entirely serendipitous reasons. *S*pecifically, the majority refuses to correct the Parole Board's practice of arbitrarily determining how much time a parolee who commits a new crime must serve on the remaining portion of his original sentence. See part I(C) n 5 *supra*. Indeed, the majority only tangentially discusses this problem by characterizing defendant's argument as follows:

> [D]efendant claims that the denial of credit against a parolee's new minimum sentence results in unequal treatment [because] . . . it creates a disparity among parolees based on the decision to plead guilty and other "arbitrary" factors that affect the parolee's sentencing date.

\* \* \*

24

Even if the Legislature had created such a distinction, the United States Supreme Court has stated that "there is no per se rule against encouraging guilty pleas," and has "squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea." *Corbitt v New Jersey*, 439 US 212, 218-219; 99 S Ct 492; 58 L Ed 2d 466 (1978). . . .

To the extent the denial of credit against the new minimum sentence results in some parole violators reaching their parole eligibility dates earlier than others based on "arbitrary" factors such as docket congestion or a judge's illness, this does not amount to a violation of equal protection. [*Ante* at 23-25.]

This analysis is misleading, and the majority thereby mischaracterizes the nature of the arbitrariness problem. That is, the majority views the issue presented in this case as whether a defendant who commits a new crime while on parole can be "encouraged" to enter a guilty plea instead of prolonging the judicial process by insisting on his right to a trial. While the majority is correct that *Corbitt* does not prohibit the state from compelling a defendant to chose between accepting a plea agreement offering a potentially shorter sentence in exchange for giving up his right to go to trial, the majority altogether ignores the actual arbitrariness problem present here, which has almost nothing to do with whether a defendant accepts or rejects a plea agreement. To illustrate the true arbitrariness problem, consider two examples.

In the first example, consider two identically situated defendants who both proceeded to trial after being arrested for a new offense while on parole. Assume that these defendants both received 5- to 10-year sentences for their original offenses. After 5 years, both the defendants are paroled, and both commit the

same new crime exactly 1 year after being conditionally released from prison and opt to proceed to trial. Defendant A is convicted of the new crime and exactly 30 days after his reincarceration is sentenced to an additional 5 to 10 years for the new crime. Defendant B is also convicted and sentenced to an additional 5 to 10 year term for the new crime. However, Defendant B is not sentenced until 1 year after he was arrested and incarcerated because: (1) the prosecutor requested multiple continuances for reasons unrelated to the defendant's case; (2) the trial judge took ill; or (3) a police officer whose testimony was needed was on vacation, which required the trial court to grant a continuance. Under the majority's interpretation of the jail credit statute, Defendant A would be eligible for parole 11 months earlier than Defendant B for no reason having anything to do with the relevant statutes.

In the second example, consider two identically situated defendants who both accepted plea bargains. Assume that defendants A and B committed the same crime and were both sentenced to 5- to 10-year terms of imprisonment for their original offenses. They are both paroled after serving 5 years, and both commit the same new crime exactly 1 year after being paroled. The defendants are then offered the same plea bargain, which both agree to take. Defendant A is able to plead guilty in 1 month and be sentenced to a new 5- to 10-year term, while Defendant B, for one of the reasons set forth in the previous paragraph, is not sentenced for 6 months. Defendant A will be eligible for parole 5 months earlier than Defendant B on the basis, again, of entirely arbitrary factors.

As can be seen by comparing two defendants who accept plea agreements and two who do not, the majority's claim that there is "no per se rule against encouraging guilty pleas" is an inapt characterization of the arbitrariness problem at issue here, which is that identically situated defendants are treated in an arbitrary fashion, regardless of whether they proceed to trial or not. More specifically, the Parole Board's current practice of failing to undertake its statutory responsibilities, passively waiting for a defendant to be convicted of a new crime, and then mechanically concluding that the amount of time a defendant has spent awaiting trial on his new offense automatically constitutes the remaining portion of the original sentence that the defendant must serve, treats identically situated defendants in a potentially widely disparate fashion, regardless of whether they accept a plea deal or not. This treatment is based on wholly arbitrary factors that have nothing to do with a defendant's culpability or with the severity of his original or new crime. Rather, the remaining portion of the sentence that a defendant must spend incarcerated before trial, which prolongs his parole-eligibility date after the new sentence is imposed, becomes a function solely of "the fortuity of how long it takes the criminal justice system to proceed to a defendant's final sentencing . . . ." *People v Wright*, 474 Mich 1138, 1140; 716 NW2d 552 (2006) (Markman, J., dissenting).

Significantly, the majority devotes little analysis or discussion to the serendipity of the process by which the state deprives an individual of his liberty and refuses to compel the Parole Board to satisfy its obligations under MCL

27

768.7a(2) and *Wayne Co Prosecutor* to render an affirmative determination of what "remaining portion" must be served on an original sentence before the beginning of a new sentence. In summary fashion, the majority concludes that "it is entirely rational for the Legislature to treat parolees and nonparolees differently . . . ." *Ante* at 23-24. However, given that it is not the disparate treatment of parolees as compared to non-parolees that gives rise to the underlying arbitrariness problem, I question whether the majority has adequately addressed the relevant issues in this case.[11]

## III. RESPONSE TO THE MAJORITY

In response to this opinion, the majority makes three specific arguments that warrant further discussion. First, it argues that the Parole Board has no authority to alter a prisoner's parole eligibility date by stating that "[t]he flaw in

---

[11] The majority correctly notes that the theory set forth in this case will not resolve all arbitrariness problems. It asserts this based upon a hypothetical scenario wherein identically situated parolees violate their parole and are both incarcerated awaiting trial without being allowed to post bond. *Ante* at 26 n 24. Both parolees are acquitted, and the Parole Board determines that neither is required to serve a remaining portion of their original sentences. Both parolees are then placed back on parole. In the majority's hypothetical, Parolee A is able to proceed to trial in one month, while Parolee B, based on arbitrary factors, is unable to proceed to trial until one year after being arrested for the alleged parole violation. The result is that Parolee B spends 11 more months in jail than Parolee A. However, this situation is no different than when two non-parolee defendants are charged with crimes, denied bond, and ultimately acquitted, with one defendant spending one month in jail awaiting trial and the other defendant spending one year in jail awaiting trial. Although these situations undeniably contain an element of arbitrariness, there is no obvious or practical remedy. The distinction between these situations and the arbitrary treatment directed toward parolees in the instant case is that parolees *do* have a remedy, which is to be awarded jail credit toward their new offenses when they are ultimately convicted.

28

[the instant opinion's] theory is that *parole eligibility* is a function of statute: MCL 791.234. Unless a new sentence is imposed consecutive to the original sentence, in which case the offender's new parole eligibility date is then governed by MCL 791.234(3), the offender's parole eligibility date does not change." *Ante* at 35 (emphasis in original). Further, the majority states that the Board's only "discretionary authority lies in determinations of parole *worthiness*." *Ante* at 36 n 29 (emphasis in original). I respectfully disagree.

In fact, the Board *does* possess the authority to determine a prisoner's parole-eligibility date. While the majority is correct that MCL 791.234 establishes the *initial* parole eligibility date for a prisoner, there are various instances in which that date, as a practical matter, must be recalculated. For example, when a parolee violates his parole and is reincarcerated for that violation, the Board must determine whether the prisoner will be given another opportunity for parole and, if such an opportunity will be afforded, on what date the Board will consider whether the prisoner is in fact deserving of parole.[12] Once that new date for parole

---

[12] If the majority is correct that the Parole Board can never set a parole-eligibility date that is different from the date established by MCL 791.234, then once a parolee's parole has been revoked for a parole violation, he could never be re-paroled. That is, if a defendant who was serving a 5- to 30-year sentence, was paroled on year 5, violated parole on year 6, and had his parole revoked, the Board would not then be able to re-parole him because it would be powerless to set a new parole-eligibility date. However, despite the majority's statement to the contrary, it acknowledges implicitly that the Board has such authority when it states that "[t]he parole board may account for previous parole *violations* in making" decisions as to whether a prisoner's current sentence should be terminated or a parolee's sentence discharged. *Ante* at 39 (emphasis added). A parolee could not

29

consideration has been reached, the Board must then look to the factors in MCL

791.233e and the DOC guidelines, see note 4, *supra*, to determine whether the

prisoner is "parole worthy." That is, when the Board sets a new possible parole

date, it is setting a new "parole eligibility" date. It is only when the prisoner

reaches that new "parole eligibility" date that his "parole worthiness" is actually

considered.[13]

Second, the majority argues that the Parole Board has no duty to make an

affirmative determination as to how long a defendant must serve on his original

sentence by inquiring as to the statutory authority that requires the Board to make

the "remaining portion" determination. The statutory authority consists in sum of:

(a) MCL 768.7a(2), which states that when a parolee violates his parole and is

sentenced to a new term of imprisonment that is to run consecutive to his original

---

have previous parole "violations" unless the Board had determined that he had
committed a violation and subsequently set a new parole-eligibility date on which
the prisoner was again paroled and positioned to violate parole a second time. The
majority thereby appears to concede that the Board possesses the authority to set a
new parole-eligibility date even after a parolee has violated parole.

[13] Additionally, my disagreement with the majority's distinction between
parole eligibility and parole worthiness is that, for purposes of the present analysis,
it is entirely academic. Even if the majority is correct that the Board's authority to
revoke parole and establish a subsequent date at which that defendant will be re-
evaluated and that this date constitutes the new parole-worthiness date, the
Board's responsibility to make a determination as to the remaining portion of a
defendant's original sentence pursuant to MCL 768.7a(2) remains the same. That
is, once a parolee violates parole, the Board possesses the authority, under the
*majority's* view, to determine at what future date it will reconsider his parole
worthiness. Regardless of whether that future date is termed the "parole-eligibility
date" or the "parole-worthiness date," the time period between the parole violation
and that future date is the remaining portion described in MCL 768.7a(2).

30

offense "the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment for the previous offense"; (b) MCL 791.234(1), which vests the Board with jurisdiction over the prisoner when he "has served a period of time equal to the minimum sentence imposed by the court" for the original offense; and (c) MCL 791.241, which states that, after determining whether a parole violation occurred, the Board "shall enter an order rescinding such parole, or reinstating the original order of parole or enter such other order as it may see fit."   Thus, the Board necessarily has jurisdiction over a prisoner who is paroled, and, once it is determined that the parolee has violated his parole, the Board "shall" enter an order reflecting what action it is taking, including whether the parole violator must serve a "remaining portion" on his original offense.[14]

Despite these statutory provisions, the majority claims that "[n]one of these statutorily defined functions of the Parole Board includes a *requirement* that the

---

[14] Because the Board "shall" enter an order taking some action after determining whether a parole violation has occurred, the majority is incorrect in asserting that there is "no statutory requirement that the Parole Board make an affirmative 'remaining portion' determination." *Ante* at 39.  Additionally, *Wayne Co Prosecutor*, 451 Mich at 584, has already determined that the Board must make a remaining portion determination, which consists of "whatever portion, between the minimum and the maximum of the earlier sentence that the Parole Board may, because the parolee violated the terms of his parole, require him to serve."  Thus, if the Board intends to impose *any* remaining portion, it must affirmatively do so.  Otherwise, there is no remaining portion for which the defendant can be required to serve.  Thus, even if the majority is correct that the Board has no duty to make an affirmative determination as to the remaining portion, the result of not making that determination is that there is no remaining portion that the defendant must serve before his new sentence begins to run.

31

Parole Board make an 'affirmative determination of how long the defendant must serve on [his first] sentence.'" *Ante* at 37 (emphasis in original). While the majority is correct that no individual statute *alone* requires the Parole Board to make an affirmative determination concerning the "remaining portion" that a parole violator must serve, this Court does not interpret in isolation clauses or paragraphs or subsections or even statutes, which together comprise part of a larger statutory scheme. Rather, each of the three principal statutes discussed herein must be read in context with the other statutes in order to ascertain the meaning of the "remaining portion" used in MCL 768.7a(2), and to determine which entity must make the "remaining portion" determination. When the pertinent laws are interpreted together, as they must be, it becomes as reasonably clear as it can be in this very difficult and convoluted area that the Parole Board is obligated to make decisions concerning a parolee's "remaining portion," so that the parolee does not begin to receive credit toward his new sentence until he has served an appropriate amount of additional time on his original sentence as a result of a parole violation. The majority's resistance to reading the relevant statutes *in pari materia* leads to what I view as an unreasonable interpretation of MCL 769.11b in which: (a) equally situated defendants may be treated in a widely disparate manner based upon entirely arbitrary factors; and (b) parolees who commit parole violations may escape the full consequences of their actions if the Parole Board is precluded from imposing a proportional "remaining portion." The

32

Legislature has not mandated these results, and I therefore disagree with the majority's unharmonious reading of the law.

## IV. CONCLUSION

MCL 769.11b requires that "any person" "shall" be awarded jail credit "because of being denied or unable to furnish bond for the offense of which he is convicted . . . ." Contrary to the majority's interpretation, there is no limitation or qualification present in this statute requiring that a defendant be denied or unable to furnish bond for any reason related to the new offense itself. Rather, the defendant need only be denied or unable to furnish bond for the new offense. Defendant here was unquestionably "unable" to furnish bond for the offense of which he was convicted and, thus, is entitled to 98 days of jail credit toward the sentence for his new offense for the amount of time he spent incarcerated awaiting sentencing. The Parole Board, in my view, must also undertake an affirmative determination of the "remaining portion" of defendant's original sentence that he must serve before beginning his new sentence. MCL 768.7a(2). The time he has served on his new sentence in excess of the 98 days of jail credit must first be applied to that remaining portion instead of defendant's new sentence, with any time left over then being counted toward his new sentence. If defendant has not yet served an amount of time in excess of the 98 days of jail credit sufficient to satisfy the remaining portion of his original sentence, then the new sentence must be suspended until defendant has completed that length of time. Because the majority reaches a different result using what I view as an erroneous and

33

incomplete reading of the statutes, and because the majority would perpetuate the present arbitrariness of the parole system by failing to require an affirmative determination from the Board, I respectfully dissent.


Stephen J. Markman